**Tsehay BELAYNEH; Esey Bekele, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 98–70941

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2000

Filed May 23, 2000

Howard R. Davis; Rose, Rose & Davis, Los Angeles, California, Attorney for the petitioners.

Marshall T. Golding and Holly A. Gimbel, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., Attorneys for the respondent.

Before: WALLACE, PREGERSON and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

In this petition for review, we must determine the extent to which a former spouse's political views may be considered imputed to a petitioner. Under the circumstances presented by this case, we conclude that substantial evidence supports the Board of Immigration Appeals' ("BIA") decision affirming the denial of eligibility for asylum.

I

Tsehay Belayneh, a native and citizen of Ethiopia, married Bekele Ibsa in 1967. They have four children, including petitioner Esey Bekele, whose claim derives from his mother's. Bekele Ibsa was a colonel under the government of Haile Selassie until it was overthrown in 1974. In 1975, the new communist government of Mengistu Haile Mariam imprisoned Colonel Bekele for a year because of his involvement with the army under the previous regime, then forcibly retired him from service. In 1981, however, the Mengistu regime forcefully recalled Colonel Bekele into the army to help put down a rebellion, and later to work for internal security forces. Belayneh urged him to quit the military and leave the country, but he argued that service in the military was the only means of supporting the family. Because of this "difference in political opinion," as Belayneh put it in her asylum application, the couple divorced in 1984.

Meanwhile, the Mengistu regime established kebeles, or community associations,

that repeatedly attempted to recruit Belayneh and her children. When her family refused to join the local kebele, its agents harassed them. In 1978, kebele agents held her in a detention center, where she suffered 45 minutes of beatings under interrogation over two days. Guards also attempted to rape her. The kebele released her after a month, when she agreed to abstain from political activity. The communists continued to monitor her family after her detention. In 1985, kebele agents temporarily detained and beat her children because they refused to participate in communist youth organizations. Over the next several years, Belayneh sent all of her children to live in the United States, including her minor son, petitioner Esey Bekele, who arrived on a tourist visa in 1989. An older son, Getaneh, received asylum in 1996, based on his detention and beating in 1985. Belayneh visited her children in the United States and returned to Ethiopia three times. On her fourth visit, she entered the United States on May 25, 1991 with a tourist visa, and stayed.

In 1991, the Ethiopian Peoples' Revolutionary Democratic Front ("EPRDF") toppled the Mengistu regime. Again, the new government arrested and imprisoned Colonel Bekele for his prior military involvement; the record is unclear whether he has been released yet. After she entered the United States, Belayneh heard that EPRDF officials visited her former residence in search of her. She also suspects, but scarcely evinces, that the new government was behind the disappearance of her cousin and the murders of her sister and brother in 1995. She fears persecution on account of her Amhara nationality, her political opinion, and her membership in the social group including relatives of army members.

On July 25, 1995, the INS issued an order to show cause charging Belayneh and her son with the deportable offense of remaining in the United States longer than permitted, in violation of 8 U.S.C. § 1251(a)(1)(C)(i), *transferred to* 8 U.S.C. § 1227(a)(1)(C)(i). At a deportation hearing on February 7, 1996, Belayneh conceded deportability and requested political asylum and withholding of deportation. The immigration judge denied the application, finding Belayneh's testimony incredible and alternatively holding that Belayneh neither suffered past persecution nor had a well founded fear of future persecution. The BIA dismissed Belayneh's appeal, declining to adopt the immigration judge's adverse credibility determination, but nonetheless agreeing that Belayneh has no well-founded fear of persecution. She and her son petition us for a review of the BIA decision. We have jurisdiction under 8 U.S.C. § 1105a(a).[1]

## II

■ We may reverse the BIA's decision only if the evidence presented by Belayneh is such that a reasonable fact-finder would be compelled to conclude that the requisite fear of persecution existed. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). An alien is eligible for asylum and may be granted asylum at the discretion of the Attorney General if the alien establishes that she is a statutory "refugee." 8 U.S.C. § 1158(a). A "refugee" is an alien who is unable or unwilling to return to the country of her nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The alien bears the burden of proof to establish eligibility for asylum, which she may sustain through credible testimony. *See* 8 C.F.R. § 208.13(a).

---

1. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") repealed 8 U.S.C. § 1105a and replaced it with a new review provision codified at 8 U.S.C. § 1252. *See* IIRIRA § 306(c)(1). The new provision does not apply to deportation proceedings, such as Belayneh's, commenced prior to April 1, 1997, and we continue to have jurisdiction under 8 U.S.C. § 1105a. *See* IIRIRA § 309(c)(1).

If an alien receives asylum, that same status may be granted to her accompanying minor child. *See* 8 U.S.C. § 1158(b)(3).

■■■ Substantial evidence supports the BIA's conclusion that Belayneh has not established a reasonable fear of future persecution on account of a protected ground. 8 U.S.C. § 1101(a)(42)(A). She claims that she will suffer persecution if she returns to Ethiopia because of her former husband's activities. Well-founded fear of persecution may be established by the persecution of an estranged spouse whose views are imputed to the petitioner. *See Meza–Manay v. INS*, 139 F.3d 759, 764 (9th Cir. 1998). However, a former relationship alone is insufficient: there must be an evidentiary nexus between the spouse's persecution and the petitioner's fear. Here, the record is devoid of any suggestion that the alleged persecutors have imputed to Belayneh her former husband's views. Further, the two have been divorced for more than fifteen years and the government has twice changed in the interim. These circumstances stand in contrast to those at issue in *Meza–Manay*, where the couple was not divorced, the petitioner had actively opposed the persecutors, and evidence existed showing that the estranged husband's views had been imputed to the petitioner. *See* 139 F.3d at 765.

The only persecution suffered by Belayneh directly was a brief detention a quarter century ago during the reign of the Mengistu regime. After that she traveled to the United States and returned to Ethiopia three times without incident. She entered the United States shortly after the EPRDF assumed power. Following her emigration, further changes occurred in Ethiopia. In 1994, Ethiopia adopted a new democratic constitution. In 1995, the Government of the Federal Democratic Republic of Ethiopia assumed power after free elections. The State Department Country Report noted that "sweeping changes" had occurred in Ethiopia and that neither ethnic Amharas nor relatives of former army officers were subject to persecution. *See* Bureau of Democracy, Human Rights and Labor, U.S. Dept. of State, *Ethiopia—Profile of Asylum Claims & Country Conditions* 3 (1995).

Therefore, substantial evidence supports the BIA's conclusion that Belayneh does not have a well-founded fear of persecution—either because of her own views or those imputed to her—upon her return to Ethiopia. Because she did not meet the threshold for asylum, she would not meet the higher burden for withholding of deportation. 8 C.F.R. § 208.16(b)(1); *see also Acewicz v. INS*, 984 F.2d 1056, 1062 (9th Cir.1993).

### III

■■■ Belayneh also claims that the BIA erred in denying her "humanitarian asylum" for atrocious past persecution. The BIA may grant asylum for humanitarian reasons where an applicant or his family has suffered under atrocious forms of persecution, even where there is little likelihood of future persecution. *See Acewicz v. INS*, 984 F.2d at 1062. When the BIA finds past persecution but no well-founded fear of future persecution, we review its denial of humanitarian asylum for an abuse of discretion. *See Lopez–Galarza v. INS*, 99 F.3d 954, 960 (9th Cir.1996). Although rape may constitute an atrocious form of persecution, *see id.* at 962, Belayneh never claims to have been raped, and there is scant evidence even of an attempted rape; she did not mention an attempted rape in her application, and testified to it only in passing. While this does not mean that she could not have been so traumatized, she failed to evince it sufficiently to support a finding of atrocity. On this record, we cannot say that the BIA abused its discretion.

■■■ Belayneh also argues that the BIA should have accorded more weight to her adult son's successful asylum claim, particularly because his persecution occurred during the Mengistu regime, yet he won

asylum in 1996. Issue preclusion applies to immigration proceedings. *See Ramon–Sepulveda v. INS*, 824 F.2d 749, 750–51 (9th Cir.1987). However, Belayneh's claim of persecution rests upon a different factual predicate than her son's: he was himself a victim of persecution not long before he sought asylum. Further, as we have noted, the country conditions have changed since his petition was considered.

PETITION DENIED