**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERNESTO ADOLFO RECINOS DE LEON,
                          *Petitioner,*

v.

ALBERTO GONZALES,* Attorney
General,
                          *Respondent.*

No. 02-73352

Agency No.
A72-527-227

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 30, 2004**
San Francisco, California

Filed March 11, 2005

Before: Betty B. Fletcher, Edward Leavy, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

---

*Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 31(c), 34(a)(2).

## COUNSEL

Andrew Knapp, Law Offices of Clair Cifuentes, Los Angeles, California, for the petitioner.

William C. Erb, Jr., Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

BERZON, Circuit Judge:

This case presents for review a literally incomprehensible opinion by an immigration judge (IJ), denying petitioner's applications for asylum and withholding of removal.[1] The Board of Immigration Appeals (BIA), pursuant to the "streamlining" regulation, 8 C.F.R. § 1003.1(e)(4) (2004),[2] affirmed without opinion. When the agency's only explanation of its final action is incoherent, we may not substantively review it without violating basic principles of judicial review.[3] We therefore grant the petition and remand the case to the BIA.

## I

Petitioner Ernesto Adolfo Recinos de Leon (Recinos) is a Guatemalan national who fled that country and arrived in the United States in 1991. In 1997, Recinos filed an application for asylum. Shortly thereafter, the former Immigration and Naturalization Service (INS)[4] commenced removal proceedings against him.

---

[1] Petitioner's brief to us also asks for relief under the Convention Against Torture (CAT). His brief before the Board of Immigration Appeals, however, sought review only of the denial of asylum and withholding of removal. As the CAT claim was not administratively exhausted, we may not consider it. *Garcia-Martinez v. Ashcroft*, 371 F.3d 1066, 1079 n.5 (9th Cir. 2004)

[2] The regulation was formerly codified at 8 C.F.R. § 3.1. As the two versions are materially identical, we refer to the version in place as the case comes to us.

[3] The IJ's opinion is appended to this opinion.

[4] The INS was abolished March 1, 2003, and its functions transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135, 2204-05; 6 U.S.C.A. § 542 note (West 2004). For convenience, we will refer to the INS, as it was the agency involved in Recinos's removal proceedings.

According to Recinos's testimony before the IJ, Recinos belonged to one of five Ladino (i.e., European-descended or *mestizo*[5]) families in Huehuetenango, a region of Guatemala predominantly populated by indigenous people. While a student in Guatemala City in the 1980s, Recinos participated in protests against the army's recruitment practices and human rights abuses against indigenous populations. Upon returning to his town after attending school, Recinos became involved in two sorts of political activity.

First, Recinos and his family organized collective resistance to a "war tax" imposed by guerrilla forces, despite having paid the tax in the past. One day, the guerrillas came to Recinos's home to demand payment. When the family resisted, the guerrillas murdered Recinos's uncle. Another uncle was killed sometime thereafter, also by guerrillas. Recinos witnessed the first killing but not the second.

Second, Recinos agitated against the forced recruitment of young men by the government-sponsored forces and urged the indigenous people to resist human-rights abuses perpetrated by those forces. Military commissioners resident in the town informed the military about these activities and about his family's past payments of guerrilla war taxes. Suspecting Recinos's involvement in the deaths of two soldiers, military officers ransacked his house one night and arrested Recinos and his cousin. The soldiers took the two men to view the two dead soldiers, then interrogated and beat the two young men for two or three hours. One soldier threatened that "next time I'm going to come back and I'm going to kill you." The abductors accused Recinos of "rising up against the army," and ordered him "[t]o be quiet and not say anything." The army then released them. Recinos promptly fled to the United States via Mexico.

---

[5]*See* VIII Oxford English Dictionary 581 (2d ed. 1989).

At the hearing before the IJ, Recinos testified to the above events. He also presented some documentary evidence, including (1) letters from his town's city hall, certified by the Guatemalan foreign ministry and the U.S. consulate as authentic, indicating that the death certificates of the two uncles could not be retrieved because the town records had been incinerated by guerrillas, and (2) several articles, human rights organization reports, and State Department country reports describing current conditions in Guatemala.

The IJ denied relief, and the BIA affirmed without opinion.

## II

The BIA's streamlining regulation allows a single member of the BIA to affirm an IJ's decision without opinion. 8 C.F.R. § 1003.1(e)(4)(ii).[6] In cases in which the BIA issues the two line form order dictated by the regulation, the IJ's opinion is "the final agency determination." *See id*. We thus look to the IJ's decision.[7] *See Sidhu v. Ashcroft*, 368 F.3d 1160, 1163 (9th Cir. 2004).

---

[6]Section 1003.1(e)(4)(ii) reads in its entirety:

> If the Board member [to whom a case is assigned] determines that the decision should be affirmed without opinion, the Board shall issue an order that reads as follows: "The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. See 8 CFR 1003.1(e)(4)." An order affirming without opinion, issued under authority of this provision, shall not include further explanation or reasoning. Such an order approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision, but does signify the Board's conclusion that any errors in the decision of the immigration judge or the Service were harmless or nonmaterial.

[7]When the BIA affirms an IJ's decision without opinion, it affirms the result, but not necessarily the reasoning of the IJ. 8 C.F.R. § 1003.1(e)(4)(ii). The BIA's grounds for affirmance may differ from reasons stated by the IJ. *See Lanza v. Ashcroft*, 389 F.3d 917, 919 (9th Cir. 2004); *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 855 & n.10 (9th Cir. 2003).

   We may affirm the IJ only on grounds set forth in the opinion under review. *See SEC v. Chenery Corp. (Chenery I)*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). "[A]n important corollary" to that rule is that the basis for an agency determination "must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action." *SEC v. Chenery Corp. (Chenery II)*, 332 U.S. 194, 196-97 (1947). When the agency's reasoning is indiscernible, "the courts cannot exercise their duty of review," *Chenery I*, 318 U.S. at 94, and instead must remand to the agency. *See Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197 (1941) (remanding case where agency gave no "clear indication" of its holding), *cited in Chenery I*, 313 U.S. at 94; *see also Gjyzi v. Ashcroft*, 386 F.3d 710, 716 (6th Cir. 2004) (vacating and remanding BIA order because "the failure of the BIA to explain its decision in this case unnecessarily frustrates our review"); *Mihaylov v. Ashcroft*, 379 F.3d 15, 17 (1st Cir. 2004) (vacating and remanding "because neither the BIA nor the Immigration Judge explained with adequate clarity and particularity the grounds for rejecting [applicant's asylum claim]").[8]

   _____

   Here, for all we can tell, the BIA may have decided that Recinos testified credibly but did not meet his burden of proving past persecution or a well-founded fear of future persecution. The BIA, however, has not so informed us. Instead, the BIA directs us to review the IJ's opinion as the agency's explanation of its decision. Because it has done so, the BIA "is saddled with . . . the risk of reversal on grounds that do not reflect the BIA's actual reasons," but do reflect the content of the IJ's opinion. *Falcon Carriche*, 350 F.3d at 855; *see also Albathani v. INS*, 318 F.3d 365, 378 (1st Cir. 2003) ("[I]f the BIA does not independently state a correct ground for affirmance in a case in which the reasoning proffered by the IJ is faulty, the BIA risks reversal on appeal." (citing *SEC v. Chenery Corp. (Chenery II)*, 332 U.S. 194, 196 (1947))).

   [8]Clarity of the IJ's decision is important for valid intra-agency decision-making as well. The current regulation governing BIA review of IJ deci-

## III

A review of applicable law and of the IJ's decision demonstrates why it is impossible for us to decipher what legal and factual reasons support the IJ's decision, and why we therefore must remand this case for further proceedings.

**[1]** The agency by regulation has delineated with precision the standards it will use in determining whether to grant asylum. *See* 8 C.F.R. § 1208.13(b). An applicant may establish eligibility for asylum based on either past persecution or a "well-founded fear of future persecution."[9] *Id.* The Attorney General, in his discretion, may grant asylum to eligible applicants.[10]

---

sions bars the BIA from engaging in its own fact finding, instead requiring the BIA to apply a clearly erroneous standard of review to an IJ's findings of fact. 8 C.F.R. § 1003.1(d)(3). When it is unclear whether the IJ has made a finding, the BIA cannot sensibly apply a clearly erroneous standard of review with regard to that issue.

We note that, under the previous regulation, the BIA could engage in fact finding on its own. *See Ramirez-Alejandre v. Ashcroft*, 319 F.3d 365, 377 (9th Cir. 2003) (en banc). The regulatory regime shifted with new regulations that went into effect on September 25, 2002. Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54878 (Aug. 26, 2002). The BIA affirmed the IJ's opinion in the present case on September 30, 2002, so the new regulation governed the BIA's decision.

[9]The statute provides for these two alternate grounds: The Attorney General may grant asylum to any applicant who has established that she is a refugee, 8 U.S.C. § 1158(b), defined as one who cannot or will not return to her country of origin "because of persecution *or* a well-founded fear of persecution." 8 U.S.C. § 1101(a)(42)(A) (emphasis added); *see also Ratnam v. INS*, 154 F.3d 990, 994 (9th Cir. 1998) ("Either past persecution or a well-founded fear of future persecution provides eligibility for a discretionary grant of asylum . . . .").

[10]Although granting asylum to eligible applicants is discretionary, courts may review the Attorney General's exercise of that discretion. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

If the applicant proves his eligibility by showing past persecution, then the remainder of the analysis is affected: That showing creates a rebuttable presumption that the applicant also has a well-founded fear of future persecution, 8 C.F.R. § 1208.13(b)(1), and thus will be granted asylum in the exercise of the Attorney General's discretion. The regulation directs the asylum officer, "in the exercise of his or her discretion," § 1208.13(b)(1)(i), to deny asylum if the government proves either a "fundamental change in circumstances," or, in certain circumstances, that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country." § 1208.13(b)(1)(ii) (burden of proof); § 1208.13(b)(1)(i)(A) (changed circumstances); § 1208.13(b)(1)(i)(B) (relocation). Notwithstanding such a showing, an applicant retains eligibility for asylum if the applicant has shown either that past persecution is especially severe, § 1208.13(b)(1)(iii)(A), *see Belayneh v. INS*, 213 F.3d 488, 491 (9th Cir. 2000), or that "other serious harm," aside from persecution, will result if he is removed to his country of origin. § 1208.13(b)(1)(iii)(B); *see also Belishta v. Ashcroft*, 378 F.3d 1078, 1079 (9th Cir. 2004) (order).

The regulation operates differently if the applicant seeks to establish his eligibility by proving only that he has a well-founded fear of future persecution, without establishing past persecution. To do so requires proving both a subjective fear of future persecution, § 1208.13(b)(2)(i)(A), and an objectively "reasonable possibility" that the applicant will be persecuted upon return to the country in question. § 1208.13(b)(2)(i)(B). An applicant relying only on a well-founded fear of future persecution must meet both the subjective and objective prongs to establish eligibility for asylum. *See, e.g.*, *Kaiser v. Ashcroft*, 390 F.3d 653, 658 (9th Cir. 2004). A reasonable possibility may be shown even where the applicant has only a ten percent chance of being persecuted. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-43 (1987). If the applicant could avoid persecution by relocating within his country, and under all relevant circumstances it is reasonable to expect him to do

so, then he does not have a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(2)(ii). If the applicant has not proven past persecution and the persecution at issue is not "by a government or government-sponsored," then the applicant bears the burden of proving that relocation would not be reasonable. § 1208.13(b)(3)(i). Otherwise, the burden of proof falls on the government. § 1208.13(b)(3)(ii).

**[2]** The IJ did not follow this decisional structure outlined by the regulation, or, for that matter, any intelligible structure. Rather, the IJ's opinion jumbles together discussions of Recinos's credibility, past persecution, future persecution, changed country circumstances, and relocation. As a result, regarding at least five crucial points, we cannot tell what factual or legal determinations, if any, the IJ made. Accordingly, in many instances, we cannot determine what holdings of the IJ we should review.

**[3]** *First*, the IJ made somewhat confusing statements regarding Recinos's credibility. Initially, the IJ stated: "I find the respondent is credible." Yet, the very next sentence of the transcribed opinion reads: "The credibility issue brings many doubts have arisen in that as to the actual happenings and that what will happen to him if he is to be returned." Although that sentence defies parsing under ordinary rules of English grammar, it appears to cast doubt on the credibility of Recinos's testimony as a whole, *or* his testimony regarding past persecution, *or* his subjective fear of future persecution, *or* the reasonableness of that fear. Any attempt to discern which, if any, of these steps in the requisite analysis was intended would be guesswork.

The presence or absence of an adverse credibility finding could affect the entirety of our analysis. When an IJ deems an asylum applicant credible, we take his testimony to be true and review past persecution, future persecution, and other findings accordingly. *Garcia-Martinez v. Ashcroft*, 371 F.3d 1066, 1069 n.1 (9th Cir. 2004). In contrast, when an IJ

expressly finds that an applicant's testimony is not credible, we review that finding for substantial evidence. *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 658 (9th Cir. 2003). Without an intelligible holding on credibility, we have no way of knowing which type of review to conduct.

**[4]** Although we note the IJ's incoherence regarding Recinos's credibility as illustrative of the entire opinion's indecipherable nature, the problem regarding the ambiguity of the credibility determination is not a reason by itself to remand to the agency. Our precedents hold that, in the absence of a clear adverse credibility finding, we take the petitioner's testimony to be true and judge his eligibility for asylum accordingly. *See Lopez v. Ashcroft*, 366 F.3d 799, 804 (9th Cir. 2004) ("Because no adverse credibility determination was made, and Lopez's tale in testimony was plausible, his story here must be accepted . . . ."); *Hartooni v. INS,* 21 F.3d 336, 342 (9th Cir. 1994) ("Absent an explicit finding that a specific statement by the petitioner is not credible we are required to accept her testimony as true."). We therefore assume in the remainder of this opinion that the IJ — and therefore the BIA — found Recinos credible, and accept his testimony as true.

**[5]** The government did not advance an argument regarding credibility in its closing arguments to the IJ or in its brief to the BIA. Indeed, that brief merely announced the government's agreement with the IJ's "ultimate decision . . . notwithstanding the analysis." When the government "did not argue before the IJ or BIA" a particular issue, we have declined to allow the government another opportunity to do so on remand. *Baballah v. Ashcroft*, 367 F.3d 1067, 1078 n.11 (9th Cir. 2004). Accordingly, on remand, the government may not relitigate the credibility of Recinos's testimony before the IJ, but the agency must take that testimony to be true.

**[6]** *Second*, it is entirely unclear whether the IJ made a finding regarding past persecution. The IJ at one point appeared

to find that Recinos had not suffered past persecution, stating: "I don't find that his story relates to or meets the burden to establish persecution, per se, under that ground." The IJ did not, however, specify what he meant by "per se" persecution, nor did he indicate what "that ground" referred to. The context amplifies this ambiguity. In the paragraph preceding the past persecution discussion, the IJ stated that "an alien who seeks [refugee] status must do so by showing . . . that they have suffered in the past persecution so severe that his suffering warrants asylum on humanitarian grounds." A plausible, though by no means definite, reading of the IJ's opinion is that the IJ did not find Recinos eligible for asylum on "that ground," that is, "humanitarian grounds" based on *severe* past persecution.

If this reading were accurate, we would have to consider whether the IJ applied the correct legal standard. The "severity of the past persecution," 8 C.F.R. § 1208.13(b)(1)(iii)(A), is relevant only to whether an applicant is to be granted asylum in the exercise of an asylum officer's discretion without showing a well-founded fear of future persecution. *Id.* The degree of severity of past persecution is irrelevant to finding whether any past persecution *occurred*.[11] Legal review of a no-severity determination thus significantly differs from legal review of the question whether an IJ properly concluded that the applicant's past treatment did not amount to persecution at all. The problem here is that we do not know which analysis to undertake, because we cannot know what the IJ decided.

---

[11]The standard for determining whether past persecution has occurred includes some measure of the seriousness of the conduct at issue. *See Fisher v. INS*, 79 F.3d 955, 961 (9th Cir. 1996) (en banc) ("Persecution is an extreme concept . . . ."). That determination is different, however, from deciding whether past persecution is *so* severe that an asylum officer must exercise his discretion to grant asylum even when the government has rebutted the applicant's presumption of a well-founded fear of future persecution. § 1208.13(b)(1)(iii).

**[7]** *Third*, the problems with the past persecution finding —
or lack thereof — infect the remainder of the IJ's opinion. As
noted, under the regulations, finding past persecution creates
a presumption of a well-founded fear of future persecution
and places the burden of proof on the government regarding
changed country conditions and relocation. 8 C.F.R.
§ 1208.13(b)(1)(ii). Further, finding past persecution would
require an individualized analysis of changed conditions to
show that those changes would affect the likelihood that
Recinos himself, and not a typical Guatemalan, would face
persecution. *See Chand v. INS*, 222 F.3d 1066, 1079 (9th Cir.
2000). As we can discern neither a definite past persecution
finding nor the legal standard used to make any such finding
if there was one, we cannot review whether the IJ applied the
correct burden of proof with respect to these other issues.

**[8]** *Fourth*, the IJ's discussion of current conditions in Gua-
temala lacks either discernible factual findings or an indica-
tion of the burden of proof or legal standard applied. The
opinion mixes discussion of changed conditions with discus-
sion of past and future persecution, and never sets forth
changed country conditions as an independent basis for deny-
ing relief.

For example, the IJ did discuss at some length changed
conditions in Guatemala since the 1996 peace accords.[12] Yet,

---

[12]The IJ stated:

> The country reports, the latest country reports in Guatemala
> indicate that Guatemala is a democratic republic with separations
> of powers and has been a change in the country. . . . The peace
> accords took place on December 29, 1996. The country reports
> indicate there have been some changes and have been difficulties
> and that the guerrillas and the military came together. They have
> made peace and the constitution of Guatemala provides for the
> integrity and security of a person, prohibits physical or psycho-
> logical torture and the use of excessive force during arrests and
> other public operations have been curtailed. . . . The results of the
> march cessation of hostilities and series of government reforms
> including disbanding of the P.A.C.s. In this time there was
> marked improvement in overall human rights situations.

the IJ never stated clearly that he found that circumstances in Guatemala have changed so fundamentally as to justify declining to grant Recinos asylum, and at some points appears to state otherwise. At one point, for example, the IJ stated, "There *could* be changed circumstances." (emphasis added). Additionally, while generally focusing on positive changes in Guatemala, the IJ noted, "there are some difficulties in little packets in little places." The IJ specifically noted continuing problems for indigenous Guatemalans, the very group for whom Recinos had advocated.

Had the IJ's discussion set forth findings with some clarity and used the proper burden of proof, it is possible that the evidence might have been sufficient to support a finding that Recinos did not meet his burden of proving that he faced a reasonable possibility of future persecution. *See* 8 C.F.R. § 1208.13(b)(2)(B). A clear finding that the government met its burden of proving fundamentally changed circumstances (a burden that would be the government's if Recinos had suffered past persecution) might also have been a proper basis to deny relief. *See* § 1208.13(b)(1)(i)(A). But changed-conditions evidence has nothing to do with finding past persecution, and "[a]n alternative holding is only adequate to support the result if it is separate from and independent of any other basis for the decision." *Tarubac v. INS*, 182 F.3d 1114, 1120 n.5 (9th Cir. 1999). We cannot be sure what the IJ found regarding changed conditions — if he found anything more than what "could" be the case — and so cannot review either of these alternative understandings of the IJ's opinion.

[9] *Fifth*, the IJ implied that relocation might be possible, but made no clear findings in this regard either. The IJ stated: "That his family moved the bulk of (indiscernible) of his father are now living in Guatemala city and they have had no problems in that country." Perhaps the IJ intended to make a finding that the government rebutted Recinos's presumption of a well-founded fear of future persecution because he "could avoid future persecution by relocating" to Guatemala

City as did his family, 8 C.F.R. § 1208.13(b)(1)(i)(B), or that Recinos did not meet the burden of proof (which would only be his burden if he did not establish past persecution and the persecution was determined not to be government-sponsored) to show that relocation would not be reasonable. § 1208.13(b)(3)(i). The IJ, however, did not make any finding explicit, nor did he establish whose burden it was to prove whether relocation was a viable option. *See* § 1208.13(b)(3) (discussing different burdens of proof regarding relocation in different situations).

## IV

The IJ opinion in this case is extreme in its lack of a coherent explanation. We acknowledge, however, that under current circumstances, it is difficult for IJs to explain their often complicated decisions adequately. In fiscal year 2003, the most recent year for which data is available, the Executive Office for Immigration Review adjudicated almost 300,000 cases in Immigration Court. EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, U.S. DEP'T OF JUSTICE, FY 2003 STATISTICAL YEAR BOOK B2 fig.1 (2004). More than 65,000 of those cases involved asylum claims. *Id.* at I1 fig.13. The caseload pressures are especially heavy in Los Angeles, where the IJ in this case sat. The Los Angeles Immigration Court heard more than 28,000 cases, *id.* at B3 tbl.1, more than 12,000 of which involved asylum claims. *Id.* at I3 tbl.6. As of January 2005, only twenty-six Immigration Judges worked in the Immigration Court in Los Angeles. EOIR Immigration Court Listing, http://www.usdoj.gov/eoir/sibpages/ICadr.htm (last visited Feb. 16, 2005).

Those sobering realities, however, do not change longstanding principles governing judicial review of agency decisions or the regulations governing the BIA's review of IJ opinions. As detailed above, we cannot, with any confidence, discern the grounds for the agency's action. The IJ's opinion — which appears to be an unedited version of a badly tran-

scribed, rambling set of oral observations — is incoherent regarding both the findings made and the legal standards applied.

**[10]** The BIA's two-line affirmance does nothing additional to satisfy the basic requirement that "the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *Chenery I*, 318 U.S. at 94. By streamlining the case, the BIA offered no coherent alternative explanation for the decision not dependent on the IJ's deficient finding of facts. Instead, the BIA rested on the IJ's indecipherable explanation.

**[11]** We will not "guess at the theory underlying" the IJ's or the BIA's opinion. *Chenery II*, 332 U.S. at 197. We therefore cannot effectively review such a decision without violating basic administrative law precepts. We accordingly remand the case. On remand, the BIA may decide legal issues in the case based on the facts established by Recinos's testimony — which must be taken as true — but the BIA may not, under 8 C.F.R. § 1003.1(d)(3), make factual determinations in the first instance. If the BIA determines that further factual determinations are necessary to its opinion, the BIA must remand the case for fact finding under § 1003.1(d)(3)(iv). *See Mendoza Manimbao,* 329 F.3d at 661.

For these reasons, we GRANT the petition for review and REMAND this case to the BIA for proceedings consistent with this opinion.

APPENDIX: Transcript of the Oral Opinion of the IJ

The respondent is a 35-year-old, married male alien, native and citizen of Guatemala, who last entered the United States on or about October the 31st, 1991. He entered at that time without inspection. He was placed in removal proceedings. Therefore, I find he is deportable or removable as charged as set forth in the Notice to Appear.

I find that he, having conceded, he is removable by clear, convincing, and unequivocal evidence, *Woodby vs. INS*, I&N 385 U.S. 276.

Respondent has applied for political asylum and withholding of deportation. His request was, first he appeared before the asylum office who referred his case to the Immigration Court for further hearing. The country reports, the latest country reports in Guatemala indicate that Guatemala is a democratic republic with separations of powers and has been a change in the country. It is also to be noted that in recent times peace has come to the United Nation Human Rights Verification Mission established in '94 monitored compliance with the Government, U.R.N.G. Human Rights Accord (indiscernible) monitoring peace accords. And there has been change in the country. The peace accords took place on December 29, 1996. The country reports indicate there have been some changes and have been difficulties and that the guerrillas and the military came together. They have made peace and the constitution of Guatemala provides for the integrity and security of a person, prohibits physical or psychological torture and the use of excessive force during arrests and other public operations have been curtailed. The country reports also indicate in Guatemala that most of the claims that are based upon political opinion would be dissipated with the new situation. The results of the march cessation of hostilities and series of government reforms including disbanding of the P.A.C.s. In this time there was marked improvement in overall human rights situations. However,

there are some difficulties in little packets in little places. And that the country conditions are much better. The claims against the Government that the reports also indicate and the respondent's applications. First he's had some difficulties as a result of living in an area of the indigenous. There were only five families that were Latino and that he would be picked out and targeted because he would look different than the other indigenous people by any other guerrillas. They also in the thrust of the claim in the respondent's arguments and his testimony in the case the claims against the Government. And there has been evidence that the Indian or indigenous people who speak the variety of different Indian tongues do have problems that have taken place. That the Indian applicants have made out have been (indiscernible) and traditional notice has taken that affect.

The thrust of the applicant's contention that he wouldn't be harmed is that he left Guatemala in 1991 and he entered approximately ten or 11 days later. He said he came to the United States because he was persecuted because of social and political problems in Guatemala. He stated he was a protestor against the human rights conditions against the indigenous people and that there were many problems against them and he protested for them and told them to be opposed to the continuing government in Guatemala.

The evidence of record indicates that he moved. He went to study in Guatemala City and was studying an institute called Gomez Castillo, accounting and bookkeeping, and that he worked with his uncle. They, at that time, always they joined the social and political groups of the college that he went to and that he would be marked and he would be known. His argument was that he advised and gave (indiscernible) comfort to the indigenous people and that he would be known by the army who indicated that he shouldn't be doing these things, that he should be supporting the military. He indicated that he was beaten once because of his involvement with the (indiscernible) and it was the army who he fears if he were to

go back there. They have a record, a dossier about him and that they would be looking for him.

The evidence of record indicates that these things have taken place back some ten or twelve years ago and that it doesn't appear that these would be harmful to him. When questioned by the Government's attorney he testified that he was detained by the military in 1990, that his father remains in Guatemala and the rest of his family is also in Guatemala but not in the same provinces where he lived but have moved to the major cities where they wouldn't have any problems. The respondent also testified in his original papers that his uncle and he was involved with their farms and they didn't want to give money or extortion money to the guerrillas who were threatening them at that time. That his two uncles were eventually killed and he feels other problems would happen to him.

The evidence of record is rather weak and not very supportive or his arguments. The conditions are very strong now against the great human rights violations. The Indian populations do have difficulties but the nexus which the respondent contends to show that because of his interference on their behalf that he would be targeted by the government, but there's no evidence to substantiate that this will actually happen or that there has been such past persecution that there would be future persecution if he were to return to that country.

The burden of proof of cases involving political asylum, withholding of deportation rest with the respondent. The Attorney General has authorized in his discretion to grant asylum to someone who has been a refugee under Section 101(a)(42). An asylum could be granted under Section 208. The statute defines a refugee as an alien who is unwilling or unable to return to his home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or

political opinion. The Board of Immigration Appeals has held that an alien who seeks such status must do so by showing that they reasonably fear they will be harmed if they return to their country or that they have suffered in the past persecution so severe that his suffering warrants asylum on humanitarian grounds. *See Matter of Chen*, Int. Dec. 3104 Vol. 20.

The issue before me is an issue of credibility. I find the respondent is credible, but I don't find that his story relates to or meets the burden to establish persecution, per se, under that ground. The credibility issue brings many doubts have arisen in that as to the actual happenings and that what will happen to him if he is to be returned. The burden of proof and political asylum, withholding of deportation rest with the applicant. In order to establish withholding of deportation respondent must show that it is more likely than not that he would be harmed if returned to his country and that a clear probability such harm exists. *See INS v. Stevic*, 467 U.S. 407 (1984). To be eligible for that in the *Matter of INS v. Cardoza-Fonseca*, 480 U.S. 421, the Supreme Court stated that a well-founded fear of persecution requires that lesser degree of proof than the clear probability of persecution and the Board of Immigration Appeals has adopted the proposition that a well-founded fear of persecution exists when a reasonable person in an alien's circumstances would fear persecution if returned to his native country. *See Matter of Mogharrabi*, Int. Dec. 3028. *See also Gribara-Flores v. INS*, 786 F.2d 1242 (5th Cir. 1986).

An assessing all the factors in this case the respondent has testified to the fact that he was a protestor for the indigenous people in his town. That his family moved the bulk of (indiscernible) of his father are now living in Guatemala City and they have had no problems in that country. There could be changed circumstances. It is also to be noted that the respondent came here and that there were some difficulties with guerrillas but they no longer are viable in Guatemala. Respondent indicated that he would be targeted by the police and it doesn't appear that that would happen or that he was such an

outrageous or known person that he would be harmed if returned to that country.

I find, after reviewing all the facts and hearing all of the case, I don't find that the respondent has met the burden of proof to establish that he would be persecuted if he was to be returned to Guatemala. However, I do find he is eligible for the relief of voluntary departure and I will give him a reasonable relief as he has been here for a long time.

## ORDER

IT IS HEREBY ORDERED respondent's application for political asylum and the withholding of deportation is denied.

IT IS FURTHER ORDERED the respondent's application for voluntary departure be granted.

  /s/
NATHAN W. GORDON
Immigration Judge