Ariel Cabusas **SUAREZ; Marilyn Marcelo Suarez, a.k.a. Marilyn DeLeon Marcelo; Paul David Suarez; Leira Emille Marcelo Suarez; Michelle Ann Marcelo Suarez, Petitioners,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

No. 06–73037.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 2008.

Filed July 11, 2008.

---

Rodel E. Rodis, Law Offices of Rodel E. Rodis, San Francisco, CA, for Petitioners.

Ronald E. Lefevre, Office of the District Counsel Department of Homeland Security, San Francisco, CA, OIL, Ana T. Zablah–Monroe, Barry J. Pettinato, Lindsay E. Williams, U.S. Department of Justice Civil Division/Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SCHROEDER, J. WALKER *, and N.R. SMITH, Circuit Judges.

MEMORANDUM **

Ariel Cabusas Suarez, his wife, Marilyn Marcelo Suarez, and their children, Paul David Suarez, Leira Emille Marcelo Suarez, and Michelle Ann Marcelo Suarez ("Petitioners"), natives and citizens of the

---

* The Honorable John M. Walker, Jr., Senior United States Circuit Court Judge for the Second Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Philippines, petition for review of the Board of Immigration Appeals' ("BIA's") dismissal of their appeal from an Immigration Judge's ("IJ's") final orders of removal. In a prior and separate action, the U.S. District Court for the Northern District of California revoked Ariel's citizenship because he falsely told the government he was single and childless in order to obtain admission to the United States as the unmarried son of his U.S. permanent resident mother.

The BIA properly affirmed the denial of Ariel's motion to terminate because Ariel was no longer a citizen when the government commenced removal proceedings against him. The prior district court judgment had revoked his naturalization. *See* 8 U.S.C. § 1451(a) (providing that district courts may revoke the naturalization of citizens whose citizenship orders and certificates of naturalization "were procured by concealment of a material fact or by willful misrepresentation"). The district court's denaturalization judgment—issued on August 7, 2002—had become final and enforceable by the time Ariel's NTA was issued on February 28, 2003. *See* Fed. R.Civ.P. 62(a) (providing that most judgments become final and enforceable ten days after they are entered, and an injunction is enforceable immediately upon entry). There was no material violation of 8 U.S.C. § 1451(f). Neither Ariel's Rule 60 motion for relief from the judgment, *see* Fed.R.Civ.P. 60(c)(2); *Smith v. Stone*, 308 F.2d 15, 17 (9th Cir.1962), nor his appeal from the denial of that motion, *see United States v. $2,490.00 in U.S. Currency*, 825 F.2d 1419, 1420 (9th Cir.1987), stayed the district court's judgment.

■ The BIA did not err in affirming the IJ's finding that Ariel was removable. The IJ correctly held that the district court order collaterally estopped Ariel from relitigating in his removal proceedings the issue of whether he obtained admission by misrepresenting his marital status. *See Belayneh v. INS*, 213 F.3d 488, 492 (9th Cir.2000) (holding that the doctrine of issue preclusion applies in removal proceedings). The district court actually and necessarily decided that Ariel obtained admission as the unmarried child of a permanent resident by misrepresenting his marital status. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (listing the elements of issue preclusion). The district court explicitly found that Ariel had falsely stated that he was unmarried and had no children on his applications for an immigrant visa and admission. The district court also found that Ariel was only admitted to the United States as a permanent resident because he made these misrepresentations. These findings were necessary to the district court's judgment because they established that Ariel's misrepresentations were material to his denaturalization.

■ The BIA did not abuse its discretion by affirming the denial of Marilyn's motion to terminate and the finding that she was removable. Marilyn had overstayed her B–2 visa, and was thus out of status and removable when her NTA was issued. *See* 8 U.S.C. § 1227(a)(1)(B) (providing that an alien who remains in the United States after the expiration of her B–2 status is removable). The approved Form I–130 visa petition did not confer legal status on Marilyn. *See Agyeman v. INS*, 296 F.3d 871, 879 (9th Cir.2002).

■ The BIA properly affirmed the IJ's denial of Marilyn's application for adjustment of status because she is not eligible for an immigrant visa, a prerequisite to adjustment. *See* 8 U.S.C. § 1255(a). Marilyn is not eligible for the visa as the spouse of a U.S. citizen because Ariel has been denaturalized. Marilyn is also unable to adjust status as the spouse of "an alien lawfully admitted for permanent residence" because Ariel was never "lawfully

admitted for permanent residence." 8 U.S.C. 1153(a)(2). Ariel was married at the time of his admission, and was therefore ineligible for the status he was accorded. *See Monet v. INS,* 791 F.2d 752, 754 (9th Cir.1986) (holding that an alien who procured permanent resident status by concealing his ineligibility had not been "lawfully admitted for permanent residence").

■ Substantial evidence supports the BIA's denial of withholding of removal and protection under the CAT. Ariel's evidence that Americans traveling in the Philippines are periodically targeted for bombings and kidnaping at hotels, beach resorts, restaurants, and other tourist sites does not show that the Suarez family will more likely than not be persecuted or tortured upon their return to the Philippines. *See Lolong v. Gonzales,* 484 F.3d 1173, 1179 (9th Cir.2007) (en banc) (holding that a general, undifferentiated claim of violence on Chinese and Christians in Indonesia by militant Islamic groups does not show that the alien is likely to be persecuted).

The petition for review is **DENIED.**