NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 26, 2010[*]
Decided June 1, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 08-2331

| | |
|---|---|
| ABDALLAHI OULD HAMOUDI, *Petitioner,* | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A79 610 852 |
| ERIC H. HOLDER, JR., Attorney General of the United States, *Respondent.* | |

**O R D E R**

Abdallahi Hamoudi petitions for review of an order of the Board of Immigration Appeals upholding an Immigration Judge's denial of his applications for asylum, withholding of removal and relief under the Convention Against Torture. Hamoudi claims that he was persecuted for his political beliefs in his native Mauritania and that he will face further persecution if forced to return. We lack jurisdiction to review the Board's denial of

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(c).

asylum, and we agree with the Board that Hamoudi is not eligible for withholding or relief under the CAT.  Accordingly, we dismiss in part and deny in part the petition for review.

Hamoudi was admitted into the United States in 2000 as a nonimmigrant student for the limited purpose of attending college.  He never did go to college, and nearly two years later he filed an application for asylum, which was denied as untimely.  Hamoudi was charged with removability, *see* 8 U.S.C. § 1227(a)(1)(C)(i), a status he conceded when he appeared with counsel at his hearing before an immigration judge.

At his hearing, Hamoudi testified about persecution he faced as a political opponent of the government of President Maaouya Ould Sid'Ahmed Taya, who served as head of state from 1984 until his ouster in a military coup in 2005.  Hamoudi and his father were active opponents of the Taya regime.  Both belonged to the same opposition party and both were detained by police following anti-government protests, his father for less than a week in 1991, Hamoudi for some two weeks in 1994.  In Hamoudi's case, the police blindfolded him, locked him in the back of a truck, and drove him to an undisclosed location where he was kept in poor conditions, beaten, and generally humiliated.  He suffered a back injury from the truck ride and a toe injury as a result of a kick he received from a police officer during his detention.  Hamoudi claims he was told by his captors that the police had acted on "orders from above or a personal vendetta."

Hamoudi fears that his post-detention activities further raised his profile as a political opponent, making future persecution more likely.  Shortly after the detention Hamoudi accepted a scholarship from the Mauritanian government to study in Algeria, where he remained politically active and helped organize at least two demonstrations against the Taya regime, including one that culminated in a two-day protest inside the Mauritanian embassy.  Hamoudi insists the Mauritanian authorities knew of his involvement in both demonstrations.  Hamoudi fears that he raised further suspicion upon returning home in 1999 to work for an Internet company, where he regularly voiced anti-government opinions.  The company, he claims, had been hired to do work for the Taya administration.

The IJ denied relief.  The asylum application, he determined, was untimely because Hamoudi did not file it within one year of his arrival in the United States.  *See* 8 U.S.C. § 1158(a)(2)(B).  As for Hamoudi's requests for relief from removal, the IJ concluded that the mistreatment he sustained as a political opponent did not amount to persecution.  The IJ also concluded that Hamoudi's reasons for fearing a return to Mauritania were unpersuasive in light of Taya's ouster.

The Board dismissed the appeal, though for different reasons.  The Board disagreed

with the IJ that Hamoudi had not presented enough evidence to demonstrate past persecution. But even if past persecution created a presumption that Hamoudi likely would face future persecution based on his political activities, *see* 8 C.F.R. § 208.16(b)(1)(i), the government's evidence of current country conditions, concluded the Board, rebutted the presumption of future persecution. *Id.* at § 208.16(b)(1)(i)(A).

In his petition for review, Hamoudi first challenges the denial of his asylum claim. Both the IJ and the Board concluded that Hamoudi was ineligible for asylum because he had applied more than a year after entering the country and lacked a plausible argument that changed country conditions excused the delay. These determinations, the first factual and the second discretionary, fall beyond our jurisdiction on review. *See* 8 U.S.C. § 1158(a)(3); *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005); *Khan v. Filip*, 554 F.3d 681, 687 (7th Cir. 2009).

Hamoudi next argues that the Board's decision to deny withholding of removal was not based on substantial evidence. He contends that elements of the Taya regime that persecuted him remain intact, and that the record does not support the government's position that conditions have improved for political opponents of the former regime.

As the government argues, however, the regime change in Mauritania directly negated Hamoudi's basis for fearing future persecution. *See Milanouic*, 591 F.3d at 570; *Ogayonne v. Mukasey*, 530 F.3d 514, 521 (7th Cir. 2008). Some of the former regime's officers stayed on in ministerial posts, but control of the national police rests with new leadership, and there is no evidence that opponents of former President Taya have been targeted. The record actually suggests the opposite. According to Freedom House, the transitional government issued a broad amnesty for political prisoners; some 100 were pardoned, the leader of Hamoudi's opposition party among them, and a number of activists returned from exile. Nongovernmental organizations have operated with fewer restrictions since President Taya's ouster, and the State Department reported no incidents of politically related imprisonments or disappearances under the transitional government. Furthermore, as the IJ noted, Hamoudi's personal circumstances belied his fear of being singled out and persecuted upon return: although he was sponsored by the Mauritanian government to study in Algeria and there vocally opposed the Taya regime for five years, he encountered no difficulties upon returning to Mauritania. *See Loho v. Mukasey*, 531 F.3d 1016, 1017-18 (9th Cir. 2008) (holding that an alien's voluntary return to native country weighs against finding of likelihood of future persecution); *Belayneh v. INS*, 213 F.3d 488, 491 (9th Cir. 2000).

Hamoudi asserts that his fear of future persecution is based on both his political opinions *and* his affiliation with the Zenaga tribe, and that the Board overlooked the latter in

denying relief.  But Hamoudi in his appeal to the Board argued only that he feared persecution on account of his political opinions; references to his tribe were peripheral at best.  His tribal affiliation claim thus was not exhausted, and we do not review it here.  *See* 8 U.S.C. § 1252(d)(1); *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004).

Finally, Hamoudi argues that the Board erred in denying him relief under the CAT.  But having satisfied ourselves that the record supports the Board's decision to deny withholding of removal, we have no difficulty concluding that Hamoudi was unlikely to meet the more stringent standard governing claims under the CAT.  *See Khan*, 554 F.3d at 692; *Ogayonne*, 530 F.3d at 522.

For the foregoing reasons, the petition for review is DISMISSED in part for lack of jurisdiction and DENIED in part.