Berzon, J., dissenting: I would grant the petition. Although there may be other bases for an adverse credibility finding, the factors actually relied upon by the Immigration Judge (“IJ”) and Board of Immigration Appeals (“BIA”) do not constitute substantial evidence supporting the finding.[1] And we must review the agency’s reasoning, not what it might have said. See, e.g., Recinos De Leon v. Gonzales, 400 F.3d 1185, 1189 (9th Cir. 2005). First, as the majority recognizes, central reasons given by the BIA for approving the adverse credibility determination should not have.been considered. Lack of adherence to Sikh practice and failure to be baptized are not probative of whether petitioner was likely to support a political organization advocating for a Sikh state. Sikhs, like other distinct groups, have ties to each other that go beyond strict religious adherence; less religious members may well support the interests of the more religious, or work to advance the cultural interests of the overall community. See, for example, regarding the secular Jews who largely created the State of Israel, Walter Laqueur, The History of Zionism 133, 170 (3rd ed. 2003); Yaacov Yadgar, Sovereign Jews: Israel, Zionism, and Judaism 82, 103-04 (2017). Second, and critically, neither the IJ nor the BIA relied on either the membership card or the medical documentation as affirmative support for the adverse credibility finding. Instead, the IJ, with BIA approval, declined to consider the card as “persuasive corroboration of his supposed political activities in India,” and “[did] not consider the medical documentation ... as supporting the bona fides of [Singh’s] past persecution claim.”[2] As to the father’s affidavit, Singh offered an explanation concerning why the document was in English — that Indian courts can translate Punjab statements into English. The IJ did not comment on that explanation or state why it was disbelieved. Without such comment, that factor is not evidence for an adverse credibility finding. See, e.g., Ai Jun Zhi v. Holder, 751 F.3d 1088, 1092-93 (9th Cir. 2014); Osorio v. INS, 99 F.3d 928, 933 (9th Cir. 1996) (holding that the agency “must address in a reasoned manner” any explanations offered by petitioners for “perceived inconsistencies”). That leaves, as supporting the adverse credibility finding, demeanor. As far as I can determine, no Ninth Circuit case has approved reliance on demeanor alone as substantial evidence for an adverse credibility finding. I would not do so here. The demeanor assessment relied on the IJ’s impression that Singh’s “demeanor was ,.. inconsistent with someone who had undergone several arrests and beatings,” because Singh “sat stiff’ and crossed his arms, and because “[h]is testimony was rote and appeared to have been rehearsed.” Of course, court testimony is usually “rehearsed,” to a degree. The arrests and beatings were four years before Singh testified, so any severe emotional impact could well have passed. And, having read the testimony myself, it appears considerably more coherent and responsive than is often the case. Further, demeanor is often in the eyes of the beholder. And when the beholder’s several other reasons for reaching an adverse credibility finding otherwise must, as here, be disregarded, we should be particularly skeptical about giving controlling weight to a demeanor assessment. Cf. Penasquitos Village Inc. v. NLRB, 565 F.2d 1074, 1086 (9th Cir. 1977) (Duniway, CJ., concurring in part and dissenting in part) (“I doubt if there are many cases in which the fact finder relies on demeanor alone. There may not be any; I hope that there are none.... Anyone who really believes that he can infallibly determine credibility solely on the basis of observed demeanor is naive.”). This skepticism is heightened, in my view, when some of the reasons given are downright silly. The IJ here, for example, found the membership card presented suspect because it said Singh was an “Active Member,” although he had just joined. But many organizations have categories of membership that include “active” status. A brand-new federal judge, for example, is an “active judge,” as opposed to a “senior judge” or a “retired judge.” I would hold that the agency’s adverse credibility finding is not based on substantial evidence, grant the petition, and remand to the agency to consider whether Singh met the one-year filing requirement for asylum, as well as to determine whether he otherwise meets the requirements for asylum and withholding of removal.[3] I therefore respectfully dissent. . Notably, the Attorney General’s brief implicitly recognizes that the BIA’s reasoning does not stand up, as it relies heavily on factors not mentioned by the agency. Commendably, the government attorney arguing before us acknowledged before argument that this reliance in the brief on different reasoning than that adopted by the BIA was improper. . I note as well that there is nothing particularly odd about a medical doctor having records regarding medical treatment provided four years before. And when doctors issue reports on medical treatment, they do not usually explain how they are "able to reconstruct the record of medication and treatment,” as the BIA would require. That the doctor had not provided the patient with a written medical report at the time of treatment is also not unusual; although many doctors in this country now do so, that is a fairly recent practice. . I concur in the denial of the petition with regard to the Convention Against Torture claim.