**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE JESUS DURAN-
RODRIGUEZ,
                    *Petitioner*,

            v.

William P. Barr, Attorney
General,
                    *Respondent*.

No. 16-72957

Agency No.
A093-457-361

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 5, 2019[*]
Phoenix, Arizona

Filed March 20, 2019

Before:  Michael Daly Hawkins, Milan D. Smith, Jr., and
Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hawkins;
Concurrence by Judge Milan D. Smith, Jr.

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

**SUMMARY**[**]

**Immigration**

The panel denied a petition for review of the Board of Immigration Appeals' dismissal of an appeal, in a case in which Jose Duran-Rodriguez sought asylum, withholding of removal, and protection under the Convention Against Torture on account of his membership in a social group of Mexican police officers.

The panel held that the evidence did not compel the conclusion that Duran-Rodriguez suffered past harm rising to the level of persecution, where he received two death threats from "sicarios," or hitmen of the Sinaloa drug cartel, to cooperate with them in transporting drugs to the Mexican border. The panel explained that although death threats alone can constitute persecution, they constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm.

The panel held that the evidence did not compel reversal of the Board's determination that Duran-Rodriguez could relocate within Mexico to avoid future harm, and that Duran-Rodriguez therefore failed to establish eligibility for asylum and withholding relief. The panel held that the Board properly denied CAT relief because Duran-Rodriguez failed to establish that he was tortured in the past, or that it was more likely than not he would be subjected to torture by or with the acquiescence of a public official in the future.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Specially concurring, Judge M. Smith wrote separately to elaborate on the point that although death threats alone may constitute persecution, the cases underlying that statement make clear that such death threats are always accompanied by some form of violence or harm to the petitioner, a family member, or others closely associated with him.

## COUNSEL

John M. Pope, Esquire, Benjamin T. Wiesinger, Esquire, and Ali Manuchehry, Esquire, Pope & Associates, PC, Phoenix, Arizona, for Petitioner.

Chad A. Readler Acting Assistant Attorney General; Janette L. Allen, Senior Litigation Counsel; Yedidya Cohen, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

HAWKINS, Senior Circuit Judge:

Petitioner Jose Jesus Duran-Rodriguez ("Duran-Rodriguez") seeks review of an order of the Board of Immigration Appeals ("BIA"), affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We deny the petition.[1]

## FACTS AND PROCEDURAL HISTORY

Duran-Rodriguez is a native and citizen of Mexico, who entered the United States in January 2014 without being admitted or paroled. The Department of Homeland Security commenced removal proceedings shortly thereafter, and Duran-Rodriguez conceded removability but indicated he intended to seek asylum, withholding of removal, and CAT protection.

Duran-Rodriguez lived in the small town of Villa Hidalgo, Sonora, Mexico from 2010 to 2014, a city with a population of about 3500. He initially worked as a municipal worker fixing roads, and in September 2012, he joined the town's four-member police force.

Duran-Rodriguez testified that in December 2013 he received two threats. When he was off duty, he received a call one morning from an individual who identified himself as "Seventy." Seventy was the leader of a group of hitmen known as the "zicarios" or "sicarios." Duran-Rodriguez

---

[1] Publication is pursuant to Ninth Circuit Rule 36–2(g).

indicated Seventy had a reputation as a dangerous person who worked for the Sinaloa drug cartel led by "El Chapo," and that he knew of Seventy's reputation through his co-workers. Seventy wanted Duran-Rodriguez's help in getting drugs to the border, but he refused. Seventy told Duran-Rodriguez he had three days to think about it and threatened to kill him if he did not cooperate.

Duran-Rodriguez was then also approached in person by a group of seven armed sicarios, including Seventy. Seventy told Duran-Rodriguez he wanted his help to be a lookout and clear a roadway to the border and offered him $7000 to do so. Duran-Rodriguez refused and Seventy again gave him three days to consider the request and told him if he refused to help he should leave the city or be killed.

Duran-Rodriguez then spoke with his commander, who advised him to leave Villa Hidalgo. He also informed the mayor of the threats, but did not report the threats to any higher law enforcement authority because he was afraid that he would be killed. He did not know if any other officers in Villa Hidalgo had been threatened or harmed, nor did he personally know of other officers who were killed for failing to cooperate with sicarios, but he had heard of such things happening to police near the borders. He indicated he had witnessed Seventy in the town on about four previous occasions armed with weapons.

Duran-Rodriguez fled from the town on December 15, 2013, and traveled to his aunt's home in Hermosillo, staying there for about two weeks without incident and then traveled to the United States.

The IJ denied his application for asylum. The IJ found that Duran-Rodriguez testified credibly, that he was "consistent in all material respects," and that his "demeanor demonstrated a genuine effort to reflect upon prior events and to provide accurate answers." The IJ concluded, however, that the two threats did not rise to the level of past persecution, noting that threats alone rise to that level only in "a small category of cases."

With respect to fear of future harm, the IJ determined that Duran-Rodriguez had not established either that he had been individually singled out for future persecution or that there was a pattern or practice of persecution of similarly situated persons on account of a protected ground. The IJ further noted that the fear of future persecution was not well-founded because Duran-Rodriguez could avoid persecution by relocating within Mexico, and that it would be reasonable for him to do so. Finally, the IJ determined Duran-Rodriguez failed to establish it was more likely than not he would be tortured if removed to Mexico.

The BIA adopted and affirmed the IJ's decision. It agreed that: the threats did not rise to the level of persecution; Duran-Rodriguez had not carried his burden of demonstrating a pattern or practice of persecution of police officers in Mexico; Duran-Rodriguez could safely relocate to another part of Mexico; it was not more likely than not he would be subjected to torture if he returned to Mexico where he received threats from private actors; and there was no evidence anyone had sought him out after he left his small town. This petition for review followed.

## SCOPE AND STANDARD OF REVIEW

Where, as here, the BIA agrees with the IJ decision and also adds its own reasoning, we review the decision of the BIA and those parts of the IJ's decision upon which it relies. *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011).

We review the denial of asylum, withholding of removal and CAT claims for substantial evidence. *Singh v. Holder*, 764 F.3d 1153, 1159 (9th Cir. 2014); *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 895 (9th Cir. 2018). Under this standard, we must uphold the agency determination unless the evidence compels a contrary conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992).

## DISCUSSION

### I. Asylum and Withholding of Removal

Duran-Rodriguez bears the burden of proving eligibility for asylum and must demonstrate that he has suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42). Persecution is "an extreme concept that does not include every sort of treatment our society regards as offensive." *Nagoulko v. INS*, 333 F.3d 1012, 1016 (9th Cir. 2003).

### A. Past Persecution

Duran-Rodriguez contends that he suffered persecution in the form of death threats on account of his membership in a particular social group (police officers in Mexico). The IJ

and BIA concluded, however, that the two threats he received in December 2013 did not rise to the level of persecution.

Although Duran-Rodriguez is correct that credible "death threats alone can  constitute persecution," *Navas v. INS*, 217 F.3d 646, 658 (9th Cir. 2000) (gathering cases),  they constitute "persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm," *Lim v INS,* 224 F.3d 929, 936 (9th Cir. 2000) (internal quotation and citation omitted).

We generally look at all of the surrounding circumstances to determine whether the threats are actually credible and rise to the level of persecution. *Nahrvani v. Gonzales*, 399 F.3d 1148, 1153 (9th Cir. 2005) ("[W]e typically rely on all of the surrounding events, including the death threat, in deciding whether persecution exists."). We have been most likely to find persecution where threats are repeated, specific and "combined with confrontation or other mistreatment." *Lim*, 224 F.3d at 936; *see also Mashiri v. Ashcroft,* 383 F.3d 1112, 1119 (9th Cir. 2004) (death threats may constitute persecution especially "when they are specific and menacing and are accompanied by evidence of violent confrontations, near-confrontations and vandalism"). On the other hand, cases with threats alone, particularly anonymous or vague ones, rarely constitute persecution. *Lim*, 224 F.3d at 936 (multiple threats by phone and mail from New People's Army).

Here, over the course of two days, Duran-Rodriguez received a threat over the phone, and another in person. The men who approached him were believed to be hitmen or "sicarios," but  Duran-Rodriguez did not personally know if they had ever carried out threats against other officers for failing to cooperate as requested. The men took no actions of

violence against Duran-Rodriguez, his family or property beyond the threats. On these facts, although it may have been *possible* for the IJ to conclude that the threats were sufficiently serious and credible to rise to the level of persecution, we cannot say the evidence *compels* the conclusion that Duran-Rodriguez suffered past persecution. *Elias-Zacarias*, 502 U.S at 481 & n.1; *Nahrvani*, 399 F.3d at 1154 ("Because reasonable minds could differ as to whether the threats received by Nahrvani constituted persecution, the record does not compel us to make a finding that the threats did constitute persecution.") (internal quotation omitted).

## B. Future Persecution

Absent evidence of past persecution, Duran-Rodriguez must establish a well-founded fear of future persecution by showing both a subjective fear of future persecution, as well as an objectively "reasonable possibility" of persecution upon return to the country in question. *Recinos De Leon v Gonzales*, 400 F.3d 1185, 1190 (9th Cir. 2005). However, an applicant "does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . . [and] under all the circumstances it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.13 (b)(2)(ii). Duran-Rodriguez had the burden of proving that such relocation would not be possible or reasonable. 8 C.F.R. § 1208.13(b)(3)(i); *Recinos De Leon*, 400 F.3d at 1190.[2]

---

[2] We need not address Duran-Rodriguez's additional arguments about a well-founded fear of future persecution because the internal relocation issue is dispositive.

Even assuming Duran-Rodriguez has a subjective fear of future persecution, he has not demonstrated that the record compels reversal of the agency's internal relocation finding. As the BIA held, relocation within Mexico was possible and reasonable:

> After [Duran-Rodriguez] was warned that he must leave town or be killed if he would not assist the drug traffickers, he left his small town and remained with his aunt in Hermosillo for 2 weeks before coming to the United States. There is no evidence or claim that the drug traffickers have sought the respondent since he left his hometown or that he could not safely relocate to Hermosillo or another part of Mexico, especially where he is no longer a police officer and could not now provide drug traffickers with the assistance they desire.

We thus deny Duran-Rodriguez's petition with respect to his claim for asylum.

To qualify for withholding of removal, an applicant must satisfy a more stringent standard and demonstrate that it is "more likely than not" he would be persecuted on account of a protected ground if returned to the designated country. 8 C.F. R. § 1208.16(b)(2). Because Duran-Rodriguez has not established eligibility for asylum, it necessarily follows that he has not established eligibility for withholding. *See Mansour v. Ashcroft*, 390 F.3d 667, 673 (9th Cir. 2004).

## II. Convention Against Torture

To qualify for relief under CAT, Duran-Rodriguez must demonstrate that it is more likely than not that he would be tortured if removed to Mexico.  8 C.F.R. § 1208.16(c)(2); *Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir. 2001). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 1208.18(a)(1).

The IJ and BIA correctly analyzed Duran-Rodriguez's CAT claim.  He has not been tortured in the past, nor has he shown that it is more likely than not he will be subjected to torture by or with the acquiescence of a public official.  He received threats from private actors and, as noted above, there is no evidence or claim that anyone has sought him or has any continuing interest in him since he departed Villa Hidalgo.

**PETITION DENIED**.

M. SMITH, Circuit Judge, specially concurring:

Although we have previously stated that death threats alone may constitute persecution, the cases underlying that statement make clear that such death threats are always accompanied by some form of violence or harm to the petitioner, a family member, or others closely associated with him.  I write separately to elaborate on that point.

"Persecution is an 'extreme concept.'" *He v. Holder*, 749 F.3d 792, 796 (9th Cir. 2014) (quoting *Donchev v. Mukasey*, 553 F.3d 1206, 1213 (9th Cir. 2009)). For this reason, "[t]hreats standing alone . . . constitute past persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual 'suffering or harm.'" *Lim v. I.N.S.*, 224 F.3d 929, 936 (9th Cir. 2000) (quoting *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997)). To suffice as past persecution, threats must be specific and credible. They must also be accompanied by physical violence or harm to petitioner, petitioner's family, or others similarly closely associated with him.

To be sure, our writings on this issue have sometimes been inexact. For example, our decision in *Navas v. I.N.S.* is often cited for the proposition that death threats alone constitute persecution. 217 F.3d 646 (9th Cir. 2000). There, we stated that "we have consistently held that death threats alone can constitute persecution." *Id.* at 658.

But that statement, in isolation, is clearly misleading. In *Navas*, the court found that the petitioner had been persecuted because "he was shot at" by the Salvadoran military and those same military officers murdered his aunt before going to the petitioner's mother's house in search of him. *Id.* at 652, 658. "When they discovered that he was not there, they beat his mother and threatened to kill both mother and son unless [the petitioner] left the country." *Id.* at 652. It is uncontroversial that when threats are combined with the infliction of such violence and harm to a petitioner's family, they establish persecution.

Furthermore, all the cases on which *Navas* relied for its matter of fact proposition similarly involved violence or harm

to the petitioner or someone closely associated with him. *See Del Carmen Molina v. I.N.S.*, 170 F.3d 1247, 1249 (9th Cir. 1999) (finding persecution where, in addition to death threats, petitioner's cousins and their families were murdered); *Garrovillas v. INS*, 156 F.3d 1010, 1016 (9th Cir. 1998) (finding persecution where petitioner received two letters with black ribbons and "[m]any people . . . who had received similar letters containing black ribbons had subsequently been killed by the [New People's Army]."); *Gonzales-Neyra v. I.N.S.*, 122 F.3d 1293, 1296 (9th Cir. 1997), *amended by* 133 F.3d 726 (9th Cir. 1998) (finding persecution where petitioner was "hunted"); *Gonzalez v. I.N.S.*, 82 F.3d 903, 910 (9th Cir. 1996) (finding death threats constituted persecution where petitioner's father was rendered deaf and mute by a bomb, mother's lands were seized, brothers were incarcerated and forced into the military, sister-in-law was beaten, petitioner's ration card was confiscated, petitioner's business license was denied, and petitioner's house was vandalized and seized); *Gomez-Saballos v. I.N.S.*, 79 F.3d 912, 916 (9th Cir. 1996) (finding persecution where the individual making the death threat previously led to the execution of petitioner's brother for harboring the same political opinion); *Aguilera-Cota v. I.N.S.*, 914 F.2d 1375, 1380 (9th Cir. 1990) (finding death threats in addition to numerous other actions—cousin killed, niece wounded, petitioner's house ransacked, sister questioned in-person about petitioner, petitioner interrogated and detained twice—amounted to persecution).[1]

---

[1] So too do other cases confirm that threats must be accompanied by violence or harm to constitute persecution. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1075 (9th Cir. 2004) (finding death threats, being shot at, as well as a brother's imprisonment and beating amounted to persecution); *Salazar-Paucar v. INS*, 281 F.3d 1069, 1075 (9th Cir. 2002) (finding death threats together with beatings of family members and murders of political counterparts constituted past persecution), *amended by* 290 F.3d 964 (9th Cir. 2002); *Reyes-Guerrero v. I.N.S.*, 192 F.3d 1241, 1246 (9th Cir. 1999)

We know of no case, nor has Duran-Rodriguez pointed to one, where death threats alone, not involving violence or other harm to petitioner, his family, or others closely associated with him, constituted persecution.

With this framework established, it is clear that the threats against Duran-Rodriguez do not amount to past persecution nor support an objectively reasonable finding of a well-founded fear of future persecution. Duran-Rodriguez had no personal knowledge of violence by "Seventy" or the "sicarios" against other police officers who had refused to help move drugs to the border. Nor did Duran-Rodriguez allege any harm or violence taken by these men against him, his family members, or the other Villa Hidalgo police officers. Indeed, he was able to remain at his aunt's house in Hermosillo, less than ten kilometers or six-and-a-half miles away from Villa Hidalgo, for two weeks without incident.

Duran-Rodriguez presents evidence of violence across the region by drug cartel gangs. But that violence targeted rival gangs, innocent bystanders, political leaders, *and* police officers, and it is well established that a general, undifferentiated claim of persecution will not suffice; Duran-Rodriguez "must show that he is at particular risk—that his 'predicament is appreciably different from the dangers faced by [his] fellow citizens.'" *Kotasz v. I.N.S.*, 31 F.3d 847, 852 (9th Cir. 1994) (quoting *Vides-Vides v. I.N.S.*, 783 F.2d 1463, 1469 (9th Cir. 1986)). Because Duran-Rodriquez has failed to make that showing, he is not entitled to relief.

---

(finding death threats by defendants against a prosecutor in a country where "[m]agistrates, judges, attorneys, and prosecutors have been suborned, threatened, assassinated, or had family members killed in connection with certain cases" allowed us to find a well-founded fear of future persecution).