**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

OCT 23 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NANCY MENA-JUAREZ *et al.*, | No. 18-71635 |
| Petitioners, | Agency Nos. A094-798-502 |
| v. | A094-798-503 |
| WILLIAM BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 21, 2020[**]
Honolulu, Hawaii

Before: WALLACE, BEA, and BENNETT, Circuit Judges.

Nancy Beatriz Mena-Juarez and her minor son, natives and citizens of

Guatemala, petition for review of a Board of Immigration Appeals (BIA) decision

affirming an order by an immigration judge (IJ) denying their applications for

withholding of removal and protection under the Convention Against Torture

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

1

(CAT). We have jurisdiction under 8 U.S.C. § 1252.

Applying the standard enacted by the REAL ID Act, we review for substantial evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (reviewing denial of withholding of removal and CAT claims for substantial evidence and explaining that "we must uphold the agency determination unless the evidence compels a contrary conclusion"); *Shrestha v. Holder*, 590 F.3d 1034, 1039–40 (9th Cir. 2010) (reviewing factual findings for substantial evidence). "Where, as here, the BIA agrees with and incorporates specific findings of the IJ while adding its own reasoning, we review [the] decisions" from both the IJ and BIA (collectively, the "Agency"). *Bhattarai v. Lynch*, 835 F.3d 1037, 1042 (9th Cir. 2016).

**1.** Mena-Juarez bears the burden of proving eligibility for withholding of removal and must demonstrate that she "is unable or unwilling to return to [her country of nationality] 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Doe v. Holder*, 736 F.3d 871, 877 (9th Cir. 2013) (quoting 8 U.S.C. § 1101(a)(42)(A)). We have observed before that "[p]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Halim v. Holder*, 590 F.3d 971, 975 (9th Cir. 2009) (internal citation omitted).

2

Mena-Juarez testified that two teenage boys, about fifteen or sixteen years old, approached her son, about ten years old at the time, and threatened to kill him. The teenage boys approached Mena-Juarez's son several times and, on some occasions, asked the son if he had a cellphone. After Mena-Juarez reported the incident to the police, the teenage boys approached her son again and warned him about Mena-Juarez going to the police.

While Mena-Juarez's "experiences are disturbing and regrettable, they do not evince actions so severe as to compel a finding of past persecution." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003); *see also Nahrvani v. Gonzales*, 399 F.3d 1148, 1153 (9th Cir. 2005) ("Although death threats against an individual may be sufficient to constitute persecution, most threats do not rise to the level of persecution." (internal citation omitted)). The threats, made by unknown teenage boys, never escalated into any physical harm to Mena-Juarez, her son, or her family. *Cf. Duran-Rodriguez*, 918 F.3d at 1028–29 (holding that substantial evidence does not compel a finding of past persecution where petitioner received death threats by individuals believed to be hitmen but "did not personally know if they had ever carried out threats"); *Wakkary v. Holder*, 558 F.3d 1049, 1059–60 (9th Cir. 2009) (rejecting past persecution where petitioner was "beaten by youths and robbed of his sandals and pocket money" and was "accosted by a threatening mob"). In fact, when Mena-Juarez attempted to confront the teenage boys, they ran away.

3

Moreover, the record does not compel the conclusion that the teenage boys targeted Mena-Juarez or her son "on account of" a protected social group. Notwithstanding whether Mena-Juarez's claimed social groups—single households who are victims of gang violence and single households who are believed to be witnesses against gang members—are cognizable, the BIA aptly remarked that the threats "were more likely opportunistic encounters . . . and have not been shown to be other than criminal in nature." *Cf. Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) (affirming denial of withholding of removal where bandits had attempted to steal a family farm and murder family members because the "harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground"). The threats started before Mena-Juarez ever reported anything to the police and, even after Mena-Juarez went to the police, the threats never escalated. *Cf. Soriano v. Holder*, 569 F.3d 1162, 1164–65 (9th Cir. 2009) (distinguishing "personal animosity" from well-founded fear of persecution and concluding that "[p]etitioner's fear of future persecution stems from the criminals' motive to retaliate against him for informing on them"). Additionally, although Mena-Juarez testified that her neighbors "found out" that these still-unknown teenage boys were members of "maras" or "mareros,"[1] there is no other evidence in

---

[1] The son's father, Mr. Gatica, wrote a letter in support of Mena-Juarez's application for relief. Despite Mena-Juarez's implication that the teenage boys belong to the infamous Mara Salvatrucha (or MS-13) gang, the IJ observed that "the Court does

4

the record that supports their gang affiliation. As the BIA reasonably concluded, without more, this speculation "is not sufficient to support that conclusion." The only motivation that can be inferred from the record is "mugging children who had phones."

Mena-Juarez also fails to establish that any claimed persecution was committed by the government of Guatemala, or by forces that the government was unable or unwilling to control. Mena-Juarez contends that the police rebuffed her when she reported the threats, but the police did not seem unable or unwilling to help. Indeed, the police indicated its willingness to investigate the unknown teenage boys when it told her that if she "found out who they were and where they were from to come back." *Cf. Nahrvani*, 399 F.3d at 1154 (denying petition for review and concluding that petitioner failed to demonstrate that the government was unable or unwilling to investigate complaints where petitioner "admitted that he did not give the police the names of any suspects because he did not know any specific names").

The record also does not compel a finding that Mena-Juarez has an "objectively reasonable" fear of future persecution. Not only is the gang affiliation of the unknown teenage boys in doubt but, as the IJ points out, "[t]here is no clear probability that the teenage boys will continue to focus on pursuing" Mena-Juarez's

---

not see the words 'Mare [*sic*] Salvatrucha gang members' in the original, Spanish version of the letter. This is a very specific criminal cartel enterprise."

son.  There is no evidence in the record that the teenage boys sought to discern the whereabouts of Mena-Juarez or her son after they departed for the United States. *See Gu v. Gonzales*, 454 F.3d 1014, 1021–22 (9th Cir. 2006) (rejecting well-founded fear of future persecution where the record was "devoid of any evidence" that the alleged persecutors had any continuing interest in petitioner).  Accordingly, the evidence in the administrative record does not compel the conclusion that Mena-Juarez has met her burden to establish that she is eligible for withholding of removal.

2.      Substantial evidence also supports the Agency's decision to deny Mena-Juarez and her son CAT relief.  Mindful of the Agency's conclusions regarding persecution, we are not compelled to find that it is "more likely than not [Mena-Juarez] will be subjected to torture by or with the acquiescence of a public official" if she were removed to Guatemala.  *Duran-Rodriguez*, 918 F.3d at 1029; *see also* 8 C.F.R. § 1208.16(c)(2) (defining "torture" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity"); *Nuru v. Gonzales*, 404 F.3d 1207, 1224 (9th Cir. 2005) (explaining that "torture is more severe than persecution and the standard of proof for the CAT claim is higher").  Mena-Juarez's son "received threats from private actors and, as noted above, there is no evidence or claim that anyone has sought him or has any continuing interest in him since he departed."

6

*Duran-Rodriguez*, 918 F.3d at 1029–30.  Therefore, Mena-Juarez's application for relief under CAT fails.

Petition **DENIED**.