NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALAN CARLOS QUIJANO SERRANO, Petitioner, v. WILLIAM P. BARR, Attorney General, Respondent. | No.   19-71845 Agency No. A216-576-695 MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 7, 2020
Portland, Oregon

Before:  PAEZ and RAWLINSON, Circuit Judges, and ANTOON,[**] District
Judge.

Alan Carlos Quijano Serrano ("Quijano") petitions for review of the denial

of his applications for asylum and withholding of removal.  The immigration judge

("IJ") denied relief, and the Board of Immigration Appeals ("BIA") affirmed, on

the ground that Quijano failed to establish that the government of El Salvador was

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable John Antoon II, United States District Judge for the
Middle District of Florida, sitting by designation.

"unwilling or unable" to control his persecutors, members of a local gang known as La Colombia Clique. We have jurisdiction under 8 U.S.C. § 1252, and we review findings of fact for substantial evidence and questions of law de novo. *See Madrigal v. Holder*, 716 F.3d 499, 503 (9th Cir. 2013). "Where, as here, the BIA agrees with the IJ decision and also adds its own reasoning, we review the decision of the BIA and those parts of the IJ's decision upon which it relies." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1027–28 (9th Cir. 2019). We grant the petition and remand for further proceedings.

1. First, the IJ erred in failing to consider whether the Salvadoran government was able to control Quijano's persecutors. Because the gang members are private actors, the IJ was required to assess whether the government was either unwilling or unable to control them. *See Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010). "Willingness to control persecutors" does not establish ability to do so because "authorities may nevertheless be powerless to stop them." *J.R. v. Barr*, 975 F.3d 778, 782 (9th Cir. 2020) (internal quotation marks omitted). Here, the IJ found only that the police "took action" against the persecutors. Such a finding is insufficient to support the conclusion that the police "action" was effective. *See Madrigal*, 716 F.3d at 506–07 (remanding where agency "cited various statistics on the efforts of the . . . government to combat drug violence" but failed to "examine the efficacy" of those efforts).

2.  Second, substantial evidence does not support the BIA's conclusion that the Salvadoran government was able to control the gang violence. "Some official responsiveness to complaints of violence, although relevant, does not automatically equate to governmental ability." *J.R.*, 975 F.3d at 782. Although the police demonstrated some responsiveness to the violence, such as by imprisoning one of the gang members who shot Quijano's brother, their actions were grossly ineffective. "Right after" the shooter was incarcerated, other gang members began to threaten and stalk Quijano, later both original shooters attempted to murder Quijano and, ultimately, the violence forced Quijano into hiding for his own survival. *See J.R.*, 975 at 782, 83 (concluding that the Salvadoran government was "unable" to control the persecutors because the petitioner continued to suffer attacks from gang members, despite the arrest and imprisonment of one gang member). Indeed, the government's control over the gang was so deficient that gang members successfully pressured both Quijano and his brother to stop cooperating with the police out of fear for their lives.[1] Quijano's credible

---

[1]  The BIA's statement that Quijano "did not report . . . receiving further threats from the gang" is flatly contradicted by the record. In his asylum application, Quijano wrote, "After I was told that me and my family would be killed if we don't remove the [police] report . . . I told [the police investigator] I can't continue with the accusation or I would be killed along with my family." Accordingly, because Quijano disclosed the threats to the police, there was no "gap in proof," contrary to the BIA's and government's suggestion. Regardless, we "superseded" our older "gap-in-proof" case law in *Bringas-Rodriguez v. Sessions*, 850 F.3d at 1069–70, and have held since that it is error "to *require* [a petitioner]

3

testimony is further bolstered by the country conditions evidence—record evidence neither the IJ nor the BIA discussed. *See Bringas-Rodriguez v. Barr*, 850 F.3d 1051, 1069 (9th Cir. 2017) (en banc) ("[O]ur law is clear that the agency . . . must examine *all* the evidence in the record that bears on the question of whether the government is unable or unwilling to control a private persecutor."); *Davila*, 968 F.3d at 1143.

In sum, the record evidence compels the conclusion that the Salvadoran government was unable, even if willing, to protect Quijano. We grant the petition for review and remand to the BIA to determine whether Quijano otherwise established past persecution.

**PETITION FOR REVIEW GRANTED AND REMANDED.**

---

to make an additional report of subsequent abuse." *Davila v. Barr*, 968 F.3d 1136, 1143 (9th Cir. 2020).

4