NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 25 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARTHA ROJAS-GALINDO, | No. 18-73150 |
| Petitioner, | Agency No. A078-110-018 |
| v. | |
| ROBERT M. WILKINSON, Acting Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 11, 2021**
Pasadena, California

Before: BOGGS,*** M. SMITH, and MURGUIA, Circuit Judges.
Dissent by Judge MURGUIA

Petitioner Martha Rojas-Galindo, a native and citizen of Colombia, petitions

for review of the Board of Immigration Appeals' (BIA) decision dismissing her

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Danny J. Boggs, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

appeal from the Immigration Judge's (IJ) decision denying her application for withholding of removal.[1] We have jurisdiction under 8 U.S.C. § 1252. We deny the petition for review.

Where, as here, "the BIA conducts its own review of the evidence and law rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Singh v. Lynch*, 802 F.3d 972, 974 (9th Cir. 2015) (internal quotation marks and citation omitted). We review the BIA's denial of withholding of removal for substantial evidence. *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). "Under this standard, we must uphold the [BIA's] determination unless the evidence compels a contrary conclusion." *Id.* (citation omitted); *see* 8 U.S.C. § 1252(b)(4)(B).

To qualify for withholding of removal, Rojas-Galindo must establish a clear probability that she will be persecuted on account of a protected ground if removed to Colombia. 8 U.S.C. § 1231(b)(3)(A); *Navas v. INS*, 217 F.3d 646, 655 (9th Cir. 2000). If past persecution is established, the requisite likelihood of future

---

[1] Rojas-Galindo also applied for protection under the Convention Against Torture (CAT), but she did not appeal the IJ's denial of her CAT claim to the BIA. She does not challenge the BIA's conclusion that she waived her CAT claim or its decision not to remand her action, thereby waiving those issues. *See Rizk v. Holder*, 629 F.3d 1083, 1091 n.3 (9th Cir. 2011) (explaining that issues not raised in an opening brief are deemed waived) (citing *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996)). Accordingly, our review is limited to the BIA's determination that Rojas-Galindo is not eligible for withholding of removal.

persecution is presumed. *See* 8 C.F.R. § 1208.16(b)(1)(i); *Navas*, 217 F.3d at 663. Absent past persecution, Rojas-Galindo must demonstrate a clear probability of future persecution. *See Tamang v. Holder*, 598 F.3d 1083, 1094 (9th Cir. 2010); *Wakkary v. Holder*, 558 F.3d 1049, 1060 (9th Cir. 2009). To meet this burden, Rojas-Galindo must show that her fear is both subjectively and objectively reasonable. *See Duran-Rodriguez*, 918 F.3d at 1029; 8 C.F.R. § 1208.16(b)(2).

1.      The BIA's conclusion that the harm Rojas-Galindo suffered did not rise to the level of persecution is supported by substantial evidence. Rojas-Galindo testified that her husband was previously extorted and assaulted by members of the Revolutionary Armed Forces of Colombia (FARC). Over one year after her husband left Colombia, Rojas-Galindo testified that she received threatening phone calls and was, on one occasion, followed by FARC members while in her car—the FARC members brandished their weapons to "scare" Rojas-Galindo but did not attempt to follow her after she made a U-turn. She also testified that FARC members attempted, unsuccessfully, to kidnap her daughter from her school, and sent Rojas-Galindo a condolence letter alluding to the death of her daughter who was still alive.

Based on this testimony, Rojas-Galindo may have suffered the types of harm that we have found could cumulatively equate to persecution—death threats, a close encounter, and abuse of a close family member—but the severity and frequency of Rojas-Galindo's experiences fall short of the past harms in those cases. *See, e.g.,*

*Mashiri v. Ashcroft*, 383 F.3d 1112, 1119–20 (9th Cir. 2004) (holding that a death threat left on the petitioner's car coupled with evidence that her tires were slashed, her home was ransacked, and she was forced to run from a threatening mob was "strong evidence" of persecution); *Ruano v. Ashcroft*, 301 F.3d 1155, 1160–61 (9th Cir. 2002) (holding that a finding of persecution was compelled where the petitioner received multiple death threats over a period of six years, was chased on multiple occasions by armed men, and the men frequently came to the petitioner's home and work looking for him); *Salazar-Paucar v. INS*, 281 F.3d 1069, 1074–75 (9th Cir. 2002) (concluding that the evidence compelled a finding of past persecution where petitioner received multiple death threats and his persecutors murdered his political allies and also beat his mother and father at petitioner's home when the persecutors could not find petitioner there).

Importantly, the BIA recognized that Rojas-Galindo's problems only began, one year *after* her husband had left for the United States, when her husband felt he could no longer meet the extortionate demands of his FARC attackers. Therefore, the BIA correctly concluded that the harm to Rojas-Galindo's husband did not carry the same weight as the harm to the petitioner's parents in *Salazar-Paucar*, as the petitioner's parents in *Salazar-Paucar* were attacked in conjunction with the assailants' pursuit of the petitioner, but here, the persecution of Rojas-Galindo's

husband was not precipitated by any interest in Rojas-Galindo herself. *See Salazar-Paucar*, 281 F.3d at 1071.

Rojas-Galindo's past harms are more analogous to the harms presented in cases declining to find past persecution based on threats alone. *See, e.g.*, *Nahrvani v. Gonzales*, 399 F.3d 1148, 1153–54 (9th Cir. 2005) (noting that "anonymous, vague" death threats coupled with property damage did not amount to persecution); *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) (holding that threats alone, without evidence the petitioner or his family was "ever touched, robbed, imprisoned, forcibly recruited, detained, interrogated, trespassed upon, or even closely confronted," did not amount to persecution). And, as noted in *Duran-Rodriguez*, the statement that death threats alone can constitute persecution "in isolation, is clearly misleading." 918 F.3d at 1030 (M. Smith, J., concurring).

"Persecution 'is an extreme concept that does not include every sort of treatment our society regards as offensive.'" *Id.* at 1028 (quoting *Nagoulko v. INS*, 333 F.3d 1012, 1016 (9th Cir. 2003)). And to reverse factual findings, "the evidence must compel a different conclusion from the one reached by the BIA." *Zheng v. Holder*, 644 F.3d 829, 835 (9th Cir. 2011) (citations omitted). While reasonable minds could differ as to whether Rojas-Galindo's past harm rises to the level of persecution, where reasonable minds can differ, the record does not compel a finding of persecution. *See Nahrvani*, 399 F.3d at 1154. Therefore, the BIA's conclusion

that the harm Rojas-Galindo suffered did not rise to the level of persecution is supported by substantial evidence.

2. Without the presumption arising from past persecution, 8 C.F.R § 208.16(b)(1)(i), Rojas-Galindo cannot show she faces a clear probability of future persecution if she is returned to Colombia. While she satisfied the subjective prong of the inquiry with her credible testimony, she fails to satisfy the objective prong.

Rojas-Galindo testified that she subjectively believed FARC members would target her. However, the country reports reflect that FARC-related violence has decreased over ninety percent since 2016, when FARC reached a peace agreement with the Colombian government. In light of these country conditions, the record does not compel a finding that Rojas-Galindo faces a clear probability of future persecution if she is returned to Colombia.

**PETITION DENIED.**

*Rojas Galindo v. Wilkinson*, No. 18-73150

MURGUIA, Circuit Judge, dissenting:

I disagree that the BIA's conclusion that the harm Rojas-Galindo suffered did not rise to the level of persecution is supported by substantial evidence.

Whether the cumulative effect of a petitioner's past harm rises to the level of persecution "is heavily fact-dependent, and is perhaps best answered by comparing the facts of Petitioner's case with those of similar cases." *Singh v. INS*, 134 F.3d 962, 967–68 (9th Cir. 1998). "We have repeatedly held that threats may be compelling evidence of past persecution, particularly when they are specific and menacing and are accompanied by evidence of violent confrontations, near-confrontations and vandalism." *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004) (collecting cases); *see, e.g.*, *Ruano v. Ashcroft*, 301 F.3d 1155, 1160–61 (9th Cir. 2002). But, as the majority notes, cases based on threats alone rarely compel a finding of persecution. *See Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000).

When viewed cumulatively, Rojas-Galindo's evidence of death threats against her and her daughter, physical attack and extortion of her husband, near-confrontation with FARC members, and the FARC's attempted kidnapping of her daughter compel a finding of past persecution. Rojas-Galindo's past harm is more like the harm suffered in *Mashiri* than it is like the harms suffered in those cases based on threats alone. *Compare Mashiri*, 383 F.3d at 1120–21 (holding that the

court need not decide whether any one experience was enough to establish persecution because when viewed cumulatively, the applicant's evidence of threats, physical attacks against close family members, near-confrontations, and other non-physical harm compelled a finding of past persecution) *with Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (concluding that the record did not compel a finding of persecution where the petitioner received only two threats and no acts of violence were taken against the petitioner, his family, or his property) *and Lim*, 224 F.3d at 936–37 (concluding that the record did not compel a finding of persecution where the petitioner received death threats in the mail and over the phone but neither the petitioner nor his family was ever confronted or attacked).

While I appreciate that this is a close question and where reasonable minds can differ the record does not compel a finding of persecution, *Nahrvani v. Gonzales*, 399 F.3d 1148, 1154 (9th Cir. 2005), I disagree that Rojas-Galindo's past harm can fairly be deemed "more analogous" to the harms suffered in cases based on threats alone, for as the majority notes, Rojas-Galindo "suffered the types of harm that we have found could cumulatively equate to persecution." Because Rojas-Galindo's past harm is not materially distinguishable from those cases where a finding of past persecution was compelled, the evidence here compels a different conclusion from the one reached by the BIA.

Accordingly, I would grant the petition for review and remand for the BIA to consider whether changed circumstances in Colombia or the possibility of Rojas-Galindo's relocation could rebut the presumption of future persecution. *See* 8 C.F.R § 208.16(b)(1)(i).