NOT FOR PUBLICATION

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

NOV 12 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BRENDA PATRICIA URZUA-ALDANA DE RIVERA; MARIE VELO SANQUEZ RIVERA URZUA; DYLAN JOSUE RIVERA URZUA, <br><br> Petitioners, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 23-2634 <br><br> Agency Nos. <br> A206-362-046 <br> A206-362-047 <br> A206-362-048 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 25, 2024[**]
San Francisco, California

Before: S.R. THOMAS, OWENS, and COLLINS, Circuit Judges.

Brenda Patricia Urzua-Aldana de Rivera ("Urzua") and her two derivative

children, natives and citizens of Guatemala, petition for review of the Board of

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Immigration Appeals' ("BIA") decision dismissing Urzua's appeal from an Immigration Judge's ("IJ") decision denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). As the parties are familiar with the facts, we do not recount them here. We deny the petition for review.

"Our review is limited to the BIA's decision except where the IJ's opinion is expressly adopted." *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022). Where the BIA agrees with the reasoning of the IJ, we "review the IJ's decision to the extent incorporated." *Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014). We review legal conclusions de novo and factual findings for substantial evidence. *Plancarte Sauceda*, 23 F.4th at 831. Factual findings are conclusive unless a reasonable adjudicator would be compelled to conclude otherwise. 8 U.S.C. § 1252(b)(4)(B). "When the BIA determines whether particular acts constitute persecution for purposes of asylum, we have held alternatively that the BIA's determination is reviewed de novo or for substantial evidence." *Singh v. Garland*, 97 F.4th 597, 603 (9th Cir. 2024). Because Urzua's argument fails under either standard, we do not address the specific standard that applies to the past persecution analysis in this case. *See Fon v. Garland*, 34 F.4th 810, 813 n.1 (9th Cir. 2022).

1. For the asylum and withholding of removal claims, Urzua alleges that she

suffered past persecution because of threats she received in a letter and a phone call while living in Guatemala. "An applicant alleging past persecution has the burden of establishing that (1) [her] treatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control." *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010).

Urzua does not establish that the harm she suffered rises to the level of persecution. First, her argument that the BIA improperly "decided that threats require a physical assault to constitute past persecution" is a mischaracterization of the BIA's decision. The BIA reasoned that, in the context of this case, the fact that Urzua was never physically assaulted in connection with the extortionary threats confirmed that she had failed to carry her burden to establish past persecution. That is not the same as ruling that Urzua could not have established past persecution without a physical assault.

Second, "unfulfilled threats alone generally do not constitute past persecution." *Ruano v. Ashcroft*, 301 F.3d 1155, 1160 (9th Cir. 2002). The only threats in this case were communicated in one letter and one phone call. *See Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) (finding no past persecution where the petitioner was threatened but "[n]either [he] nor his family was ever touched,

3                                                          23-2634

robbed, imprisoned, forcibly recruited, detained, interrogated, trespassed upon, or even closely confronted"). The cases Urzua relies on are distinguishable. The record shows no "violence against family members, vandalism, [or] economic harm" as in *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004); no "near face-to-face confrontations" with "men [she] knew to be armed and out to get [her]" as in *Ruano*, 301 F.3d at 1160; and no "relentless[] harass[ment]" as in *Baballah v. Ashcroft*, 367 F.3d 1067, 1071 (9th Cir. 2004).

Accordingly, Urzua did not establish past persecution. Because we hold that Urzua's treatment did not rise to the level of persecution, we do not reach the parties' arguments concerning whether Urzua's proposed particular social groups are cognizable or whether she met the nexus requirement. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

2. Urzua next argues that she has a well-founded fear of future persecution. "Either past persecution or a well-founded fear of future persecution provides eligibility for a discretionary grant of asylum." *Ratnam v. INS*, 154 F.3d 990, 994 (9th Cir. 1998). "Absent evidence of past persecution, . . . a well-founded fear of future persecution" is established "by showing both a subjective fear of future persecution, as well as an objectively 'reasonable possibility' of persecution upon

23-2634

return to the country in question." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1029 (9th Cir. 2019). "However, an applicant 'does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . . [and] under all the circumstances it would be reasonable to expect the applicant to do so.'" *Id.* (quoting 8 C.F.R. § 1208.13(b)(2)(ii)).

Substantial evidence supports the BIA's holding that Urzua did not "establish[] that her fear of future persecution in Guatemala is objectively reasonable." After the threatening letter and phone call, Urzua relocated to Quesada, where she and her children lived undisturbed for three years. Alex, her suspected extortionist, never learned of her location nor at any time indicated a continued interest in threatening or extorting her, even though he was "a family friend" who "live[d] in a close by colony" and had "visit[ed] [her] mother in law and brother in law." Urzua also maintained constant social contact with Alex's aunt, but he still never threatened or expressed an interest in Urzua again.

Urzua draws several parallels between her case and *Kaiser v. Ashcroft*, 390 F.3d 653 (9th Cir. 2004), and *Akosung v. Barr*, 970 F.3d 1095 (9th Cir. 2020). But in *Kaiser*, the petitioner and his family received numerous threatening phone calls that escalated into death threats, were "followed by . . . assassins in an apparent attempted kidnapping," and, despite moving across the country, "received over 30

calls from the same individual" who threatened to rape the petitioner's wife and "kill the entire family." 390 F.3d at 656-57. And in *Akosung*, the petitioner "attempted to hide from her pursuers in several different areas of Cameroon." 970 F.3d at 1101. After word of her presence in one city was leaked, her pursuers dispatched a delegation to capture her, which she only escaped after a struggle. *Id.* at 1100-01. Urzua's experience in Quesada sharply contrasts with those cases, where the petitioners demonstrated that they could not safely internally relocate.

Accordingly, substantial evidence supports the BIA's determination that Urzua did not establish a well-founded fear of future persecution. Therefore, substantial evidence supports the BIA's denial of asylum and withholding of removal.

3. Urzua finally contends that she is entitled to CAT protection. For CAT protection, "an applicant must show 'it is more likely than not that he or she would be tortured if removed'" to the relevant home country. *Plancarte Sauceda*, 23 F.4th at 834 (quoting 8 C.F.R. § 1208.16(c)(2)). Urzua's sole argument, citing *Cole v. Holder*, 659 F.3d 762 (9th Cir. 2011), is that we purportedly have a "well-settled remand rule" that BIA decisions not referencing country conditions are remanded. But the *Cole* court did not announce an automatic rule of remand. Rather, it reasoned that the BIA need not "discuss each piece of evidence submitted" and that "a 'general statement that [the agency] considered all the

evidence before [it]' may be sufficient" unless "there is any indication that the BIA did not consider all of the evidence," such as by "misstating the record [or] failing to mention highly probative or potentially dispositive evidence." *Id.* at 771-72 (citation omitted). Under 8 C.F.R. § 1208.16(c)(3), only "relevant information regarding conditions in the country of removal" need be considered.

Urzua claims that "[a]bsent from the [BIA's] analysis was reference to the country conditions evidence showing murders against women for failing to comply with extortion." But the portion of the record Urzua cites only discusses domestic violence and sexual harassment against women—the words "extortion" or "threat" do not appear once. All but one of her other citations to country conditions are not specific to Guatemala. The one specific to Guatemala cuts against Urzua's claim, stating that in "most cases" of extortion, "changing the phone number and/or not responding to the threats will resolve the matter."

Accordingly, substantial evidence supports the BIA's determination that Urzua was not entitled to CAT protection.

**PETITION FOR REVIEW DENIED.**