NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 6 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ELADIO RAMON ARELLANO MOLINA; YUSLEIDY DEL CARMEN MARTINEZ MORILLO; ELIAN JOSE ARELLANO MARTINEZ,

Petitioners,

v.

PAMELA BONDI, Attorney General,

Respondent.

No. 24-3732

Agency Nos.
A220-852-672,
A220-490-988,
A220-490-989

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 6, 2026[**]
Seattle, Washington

Before: PAEZ, BEA, and BRESS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ.

Yusleidy Del Carmen Martinez Morillo, her husband, and her minor son

(collectively, "Martinez"), natives and citizens of Venezuela, petition for review of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

a Board of Immigration Appeals (BIA) decision dismissing their appeal of an immigration judge's (IJ) order denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). "When, as here, the BIA conducts an independent review of the IJ's findings, this court reviews the BIA's decision and not that of the IJ." *Valadez-Munoz v. Holder*, 623 F.3d 1304, 1307–08 (9th Cir. 2010) (quoting *Poblete Mendoza v. Holder*, 606 F.3d 1137, 1140 (9th Cir. 2010)). We review the denial of asylum, withholding of removal, and CAT relief for substantial evidence. *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). "Under this standard, we must uphold the agency determination unless the evidence compels a contrary conclusion." *Id.* We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1. Substantial evidence supports the denial of asylum and withholding of removal. To be eligible for asylum, Martinez "has the burden to demonstrate a likelihood of 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021) (quoting 8 U.S.C. § 1101(a)(42)(A)). To establish eligibility for withholding of removal, she must "prove that it is more likely than not" that she will be persecuted in Venezuela "because of" membership in a particular social group or other protected ground. *Barajas-Romero v. Lynch*, 846 F.3d 351, 357, 360 (9th Cir. 2017); *see* 8 U.S.C.

§ 1231(b)(3)(A). "One way to satisfy this burden is by showing past persecution, which gives rise to a rebuttable presumption of future persecution." *Sharma*, 9 F.4th at 1060. "Proving past persecution requires the petitioner to show, among other elements, that '[her] treatment rises to the level of persecution.'" *Id.* (quoting *Hussain v. Rosen*, 985 F.3d 634, 645 (9th Cir. 2021)).

Contrary to Martinez's argument, the BIA did not engage in independent fact-finding when assessing past persecution. Although the BIA may not conduct its own fact-finding and may review the IJ's findings only for clear error, 8 C.F.R. § 1003.1(d)(3)(i), the BIA may review "questions of law, discretion, and judgment . . . de novo," *id.* § 1003.1(d)(3)(ii). Here, the BIA concluded that the IJ's factual findings were not clearly erroneous and reviewed de novo whether those facts amounted to past persecution. Martinez "does not point to any fact found by the IJ that was ignored by the BIA, or any fact found by the BIA that was not found by the IJ." *Perez-Palafox v. Holder*, 744 F.3d 1138, 1145 (9th Cir. 2014).

Substantial evidence also supports the agency's conclusion that Martinez did not demonstrate past persecution. *See Urias-Orellana v. Bondi*, 146 S. Ct. 845, 848 (2026). Persecution "'is an extreme concept that means something considerably more than discrimination or harassment.'" *Sharma*, 9 F.4th at 1060 (quoting *Donchev v. Mukasey*, 553 F.3d 1206, 1213 (9th Cir. 2009)). Martinez did not suffer physical violence or injuries during or after the protests that she attended. *See id.* at

1061 ("We have repeatedly denied petitions for review when, among other factors, the record did not demonstrate significant physical harm."). Although community council members confronted Martinez about her protest attendance, they made no specific threats against her. Martinez was never detained or harmed due to her involvement in the opposition movement, nor were her friends and family. In short, Martinez's experiences in Venezuela, although unfortunate, did not rise to the level of persecution.

Because Martinez failed to establish past persecution, she was not entitled to a rebuttable presumption of a well-founded fear of future persecution. *Duran-Rodriguez*, 918 F.3d at 1029. And the agency did not err in concluding that she failed to establish "an objectively reasonable possibility of persecution upon return to the country in question." *Id.* (quotation marks and citation omitted). Martinez did not demonstrate that she "faces an individualized risk of persecution or that there is a pattern or practice of persecution against similarly situated individuals." *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) (quoting *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000)). Nor did she establish a well-founded fear of persecution as a member of a "disfavored group." *See Wakkary v. Holder*, 558 F.3d 1049, 1064 (9th Cir. 2009) (noting that "our disfavored group cases do not invent a judicially created alternative to the statutory and regulatory scheme, or a lower threshold of proof" (quotation marks and citations omitted)).

Martinez's interactions with the police and council members involved "only vague threats that led to no harm." *Sharma*, 9 F.4th at 1065. And again, neither Martinez nor her friends and family members have been harmed. *See id.* ("The ongoing safety of family members in the petitioner's native country undermines a reasonable fear of future persecution."). The record does not demonstrate that the Venezuelan government was or will be interested in persecuting Martinez. Nor does the record compel a finding that there is a pattern or practice of persecution against similarly situated individuals. Neither Martinez nor her family suffered harm. Martinez also did not personally know anyone who was harmed by the Venezuelan government after engaging in political activity. *See Wakkary*, 558 F.3d at 1060–65 (discussing standard for establishing pattern or practice of persecution, as well as persecution based on membership in a disfavored group).[1]

---

[1] The dissent contends that the agency failed to undertake a correlational analysis regarding Martinez's membership in a "disfavored group" by "explain[ing] whether the heightened group risk outweighed Martinez's lower individual level of risk." *See Kotasz v. INS*, 31 F.3d 847, 853–54 (9th Cir. 1994). But again, as the agency found, Martinez could not name anyone she personally knew who was harmed by the Venezuelan government, even though "her entire family and most of her community supported the opposition." The IJ further stated that, "for substantially the same reasons" as the rest of the persecution analysis, "[w]hile anti-government protesters *may* constitute a 'disfavored group' at a heightened risk of persecution in Venezuela," Martinez "did not hold any position in the opposition party or any leadership role within the protests as to be a more prominent target than the other protesters." The IJ thus conducted a sufficient correlational analysis. That the dissent would weigh the evidence differently does not demonstrate error in the IJ's decision.

2. Substantial evidence supports the denial of CAT relief. "To qualify for CAT relief, a petitioner must show that she more likely than not will be tortured if she is removed to her native country." *Vitug v. Holder*, 723 F.3d 1056, 1066 (9th Cir. 2013). "To constitute torture, an act must inflict severe pain or suffering, and it must be undertaken at the instigation of, or with the consent or acquiescence of, a public official." *Andrade v. Garland*, 94 F.4th 904, 914 (9th Cir. 2024) (quotation marks and citation omitted); *see also* 8 C.F.R. § 1208.18(a)(1). Here, Martinez was not tortured in Venezuela, and the record does not compel the conclusion that the government will likely torture her or acquiesce in her torture.

**PETITION DENIED.**[2]

---

[2] Martinez's motion to stay removal, Dkt. 3, is denied. The temporary stay of removal shall remain in place until the mandate issues.

24-3732

PAEZ, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's holding regarding Martinez's failure to establish past persecution and failure to demonstrate eligibility for CAT relief. I further agree with the majority's holding that substantial evidence supports the agency's conclusion that Martinez did not establish an objectively well-founded fear of persecution based only on her individual risk or on a pattern or practice of persecution. I respectfully dissent, however, because the majority ignores the legal error committed by the agency in examining Martinez's third theory of well-founded fear: that she is a member of a "disfavored group."

To determine whether a petitioner has established a well-founded fear of persecution based on membership in a "disfavored group," we examine "(1) the risk level of membership in the group (i.e., the extent and the severity of persecution suffered by the group) and (2) the [noncitizen's] individual risk level (i.e., whether the [noncitizen] has a special role in the group or is more likely to come to the attention of the persecutors making [her] a more likely target for persecution)." *Mgoian v. I.N.S.*, 184 F.3d 1029, 1035 n.4 (9th Cir. 1999).

"The relationship between these two factors is correlational; that is to say, the more serious and widespread the threat of persecution to the group, the less individualized the threat of persecution needs to be." *Id.* *See also Kotasz v. I.N.S.*,

31 F.3d 847, 853 (9th Cir. 1994) ("[T]he more egregious the showing of group persecution—the greater the risk to all members of the group—the less evidence of individualized persecution must be adduced.").

Martinez argues that the IJ erred in analyzing her membership in a disfavored group because he "failed to analyze the *correlational* relationship between the two prongs of the… test." I agree. The IJ determined that group-level risk for opponents of the Maduro regime was "heightened," but Martinez's individual risk level was low, because she "did not hold any position in the opposition party or any leadership role within the protests as to be a more prominent target than the other protestors." This analysis is incomplete because it does not consider the "correlational" component. *Mgoian*, 184 F.3d at 1035 n.4. Indeed, even if Martinez had a low level of individualized risk, she could prevail under this theory of reasonable fear if the "threat of persecution to the group" was "more serious and widespread," *see id.*, or, in other words, "more egregious," *see Kotasz*, 31 F.3d at 853.

Instead of analyzing the correlation between these two factors, the IJ assumed that Martinez could not establish an objective fear because she did not hold a leadership position in the opposition party or protest movement. In doing so, the IJ applied the wrong legal standard for the second factor, which examines "the [noncitizen's] individual risk level (i.e., whether the [noncitizen] has a special

role in the group *or* is more likely to come to the attention of the persecutors making [her] a more likely target for persecution).” *Mgoian*, 184 F.3d at 1035 n.4 (emphasis added). The use of the word “or” indicates that the fact that Martinez lacks a “special role in the group,” like a formal position in the opposition party, is not dispositive. *See also Kotasz*, 31 F.3d at 853 (“[Risk from group membership] can rise to the level required for establishing a well-founded fear of persecution *either* as a result of an individual’s activities in support of the group, *or* because an individual is a member of a certain element of the group that is itself at greater risk of persecution than is the membership of the group as a whole.”) (emphasis added).

The majority concludes that the IJ’s analysis was “sufficient[ly] correlational,” because the IJ denied relief on Martinez’s disfavored group theory “[f]or substantially the same reasons” that he denied relief based on her individual risk alone. This approach is not faithful to the disfavored group framework. Denying Martinez’s disfavored group claim “[f]or substantially the same reasons” as her claim based on individual risk eliminates group-level risk from the analysis. Indeed, the “same reasons” referred to by the IJ only relate to Martinez’s individual level of risk, not her group-level risk. The majority misses the point by narrowing Martinez’s claimed group to those “she personally knew” who supported the opposition. Rather, Martinez claims membership in the broader group of “anti-government protestors,” as the IJ recognized when he determined

3

that "anti-government protestors may constitute a 'disfavored group' at a heightened risk of persecution in Venezuela."  The IJ then determined that, assuming heightened group risk, Martinez's claim nonetheless failed because she did not demonstrate that her individual risk was also heightened.  This was error because the correlational analysis does not require Martinez to prove heightened individual risk.

The IJ should have conducted a correlational analysis and explained whether the heightened group risk outweighed Martinez's lower individual level of risk. *See, e.g., Sael v. Ashcroft*, 386 F.3d 922, 927 (9th Cir. 2004) ("Because the record establishes that ethnic Chinese are significantly disfavored in Indonesia, Sael must demonstrate a 'comparatively low' level of individualized risk in order to prove that she has a well-founded fear of future persecution."); *see also Hoxha v. Ashcroft*, 319 F.3d 1179, 1183 (9th Cir. 2003).

With this "comparatively low" requirement, Martinez's claim has considerable force.  The record evidence shows that she was well-known in the community as a supporter of the opposition because she operated the only community grocery store, where she wore a hat showing her support of the opposition, and had a bumper sticker on her car with the name of the opposition party.  Even before Martinez attended a march in 2017, her store was known for donating snacks and drinks to protestors at marches at the request of opposition

4

party leaders, approximately monthly, since "around 2010." Her family, including her mother, had also operated the store, and "[e]ver since [her] grandmother," Martinez's family had opposed the governing regime. Martinez was individually targeted for explicitly political reasons at least one time, when members of the local government-run community council came to her store. They informed her that "they knew [she was] supporting the opposition" and "going to the marches," and warned her to "stop protesting." This occurred during one of the community council's frequent "compliance" visits, to purportedly ensure that the store followed price controls, which Martinez believed was a form of intimidation.

The IJ did not consider this evidence when examining the relevance of Martinez's membership in a "disfavored group." Rather, he erroneously concluded that Martinez could only establish a well-founded fear under this theory if she held a leadership position in the opposition party or protest movement. This constitutes reversible legal error. *See Kotasz*, 31 F.3d at 855 (remanding so the agency could correctly apply the "disfavored group" analysis for a petitioner who was an active opponent of the communist regime in Hungary). I would therefore grant the petition in part and remand with directions for the agency to conduct the correlational "disfavored group" analysis in the first instance.